## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARMON & CARMON, A PARTNERSHIP<br>767 3rd Avenue, 24TH Floor<br>New York, NY 10017<br><br>    Plaintiff<br><br>v.<br><br>DENNIS CAMPBELL<br>Schweigmuhlweg 6A<br>5020 Salzburg, Austria<br>Serve:  Mark Schonfeld, Esq.<br>Burns & Levinson LLP<br>125 Summer Street<br>Boston, MA 02110<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CA _____ |

## COMPLAINT

Now comes the Plaintiff, by counsel, and represents to the Court as follows:

## NATURE OF THE ACTION

1.     This is a claim for breach of contract and trademark infringement, unfair competition, and false advertising under federal, state, and common law.  Plaintiff ("Carmon & Carmon") brings this action because Defendant promoted legal services and related services in the United States in competition with Plaintiff in connection with the Service Mark "Globalaw" ("Mark") that violated Plaintiff's valuable intellectual property rights.  Specifically, Defendant created and promoted an organization for lawyers and named it Globalaw.  The Mark "Globalaw" is the exclusive property of Plaintiff, and Plaintiff has never given Defendant permission or license to use the Mark in the United States.  Defendant and those acting in concert with him advertised his connection with "Globalaw" on the Internet, through the wire and the mail, and in other public media and publications in the United States and in international commerce with the United

States.  Plaintiff filed and personally served a Complaint against Defendant in 2005 in the United States District Court in Boston, Massachusetts for trademark infringement and other causes of action. A copy of the Complaint is appended as Exhibit A.  Subsequently Plaintiff and Defendant entered into an Agreement on July 14, 2005, Exhibit B, ("the Agreement") whereby Defendant agreed, *inter alia,* to provide Plaintiff **"with any documents requested by Carmon relevant to the Globalaw dispute that Campbell has in his possession or control."** (Paragraph 3 of the Agreement.)  There is a pending litigation in this Court between Plaintiff here and others regarding the service mark Globalaw for which Plaintiff here was seeking documents from Campbell, Defendant here.  Paragraph 16, infra, has further details about that litigation.  On August 26, 2005, Plaintiff delivered to the Defendant through his counsel a list of documents requested by Carmon which were under Defendant's possession or control. Defendant has not produced the requested documents despite repeated requests from Plaintiff to do so, thereby breaching the Agreement.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1338(a) and (b).  Jurisdiction over the state court claims is appropriate under 28 U.S.C. § 1338(b) and principles of pendant jurisdiction.  Additionally, the Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Sec. 1367.

3.      This Court has jurisdiction over the Defendant because of his use of the mark Globalaw in advertising, offering, and providing services in Washington, D.C., and elsewhere.  Venue in this district is proper pursuant to 28 U.S.C. §§ 1391(b) and (c), and pursuant to written agreement of Defendant that venue would be appropriate in this Court in the event Defendant

failed to fulfill his obligations under the Agreement appended hereto as Exhibit B.

## THE PARTIES

4.      Carmon & Carmon, a New York law partnership of Haggai Carmon and Rakeffet Carmon, is the Plaintiff in this action.  Carmon & Carmon uses the name Globalaw as a service mark for its legal services.

5.      Defendant Dennis Campbell ("Campbell") is, on information and belief, an American lawyer who is a citizen of the United States residing in Salzburg, Austria.  On information and belief, he does business in this district and other districts in the United States and has infringed on Plaintiff's Mark by offering his legal-related services under the identical mark and by other actions.

## CASE HISTORY & BACKGROUND

6.      Plaintiff is the owner of the service mark GLOBALAW for use with the providing of legal services. Plaintiff provides legal services to individuals and corporations located inside and outside the U.S. regarding U.S. and international law issues. Since 1985 it has regularly been rendering opinions concerning international and foreign law to the U.S. Department of Justice and has been appearing on behalf of the United States in foreign courts in suits to which the United States is a party.   In addition to work for the Department of Justice, Plaintiff has been retained to render legal services for three U.S. Attorney's offices, the U.S. Department of State, the Securities and Exchange Commission (SEC), the Internal Revenue Service (IRS), the Agency for International Development (AID), the Office of Thrift Supervision (OTS), the Postal Inspection Office, and the Federal Deposit Insurance Corporation (FDIC).  Additionally, U.S.

Government agencies have assigned Plaintiff with the world-wide responsibility (except for the U.S.) of complex multinational and multi-million dollar cases which required work in more than 30 countries. Plaintiff's attorneys frequently traveled internationally on official U.S. Government business. Attached hereto is a letter by the Director of the Office of Foreign Litigation of the U.S. Department of Justice, marked as Exhibit C. Plaintiff's services were rendered under the mark GLOBALAW.

7.      Plaintiff has used the mark GLOBALAW since at least 1987 to promote its business.

8.      Defendant sent a letter to Plaintiff on March 29, 1993, saying that he expected to visit the United States during May and June, 1993, sought professional cooperation with Plaintiff, and suggested a meeting. A meeting of Defendant Dennis Campbell and Haggai Carmon was held in New York in May or June 1993. However, no affiliation between Defendant and Plaintiff resulted.

9.      Commencing November 1987 Plaintiff systematically was seeking to expand and contacted many foreign lawyers, including in Austria, for the purpose of potentially associating with them. On information and belief, beginning April or May 1994, Defendant, without Plaintiff's knowledge or consent, adopted and began use of Plaintiff's mark in connection with services virtually identical to or closely related to Plaintiff's legal services. On information and belief, Defendant adopted the mark Globalaw with the intent to cause confusion, mistake, or to deceive, and to trade upon Plaintiff's good will and established reputation in the legal field.

10.     On information and belief, Defendant attempted to register the mark Globalaw in the United States knowing of Plaintiff's senior rights to the mark. On March 28, 1994 Plaintiff filed a trademark application in the U.S. indicating a first use date of January 22, 1988. Due to a series of technical errors, processing was delayed.

11.    On August 16, 1994 Defendant filed a trademark application in Austria alleging first use of the mark January 4, 1994. In mid 1993 Plaintiff sent a GLOBALAW solicitation letter also to Dr. Lothar Hofmann, Rustler, Frotz & Partners Mariahilfer Strasse 196 Vienna, Austria.  Dr. Hofmann subsequently appeared as the Defendant's attorney in Defendant's Austrian trademark application.

12.    On November 30, 1994 Defendant filed a trademark application in the U.S. based on his alleged actual use of the mark in commerce since January 4, 1994 and under Section 44(d) of the Trademark Act (15 U.S.C. § 1126(d)) based upon an application for registration filed in another country on August 16, 1994.  The U.S. Patent and Trademark Office published the mark in the *Official Gazette* of December 19, 1995.

13.    On February 3, 1995, all technical issues of Plaintiff's application in the U.S. were resolved, and Plaintiff's application received a filing date of February 3, 1995.

14.    In January 1996, as soon as it was legally possible, Plaintiff filed an Opposition to Defendant's attempted registration of the mark in the U.S.

15.    On February 6, 2002, Globalaw Limited was incorporated in the Jersey Isles by several U.S. law firms. On February 28, 2002 Defendant and Globalaw Limited executed an Asset Transfer Agreement transferring to Globalaw Limited Defendant's rights in the mark Globalaw wherever they existed, except in the United States.  See Exhibit D, attached.

16.    In January 2003, Globalaw Limited filed against Carmon & Carmon in the United States District Court in Washington, D.C., a Complaint for Declaratory Judgment claiming that it owned the U.S. rights to the mark Globalaw.  Carmon & Carmon promptly Answered and Counterclaimed against Globalaw Limited, and three U.S. law firms, Jackson Walker, L.L.P. ("Jackson Walker"), Ballard Spahr Andrews & Ingersoll, L.L.P. ("BSAI"), and Garvey Schubert

Barer, for trademark infringement and Lanham Act violations. Plaintiff's initial Counterclaim named additional American law firms; however, under stipulation they were dismissed without prejudice. The named three firms will be referred to here as "the U.S. law firms." Opposition proceedings in the United States Trademark Trial and Appeal Board (TTAB) involving Defendant's pending trademark application were suspended pending the resolution of the federal court litigation.

17.     On February 2, 2005, Plaintiff Carmon & Carmon filed a Complaint in the United States District Court in Boston, MA, against Defendant Campbell for trademark infringement and unfair competition under federal, state, and common law. See Exhibit A, attached. On July 14, 2005, Defendant and Plaintiff entered into a Settlement Agreement and Plaintiff dismissed the Complaint under the terms of the Agreement (Exhibit B) and subject to its terms.

18.     Plaintiff has been using the mark GLOBALAW in commerce in connection with legal services continuously from on or about November 1987, a date long prior to (a) the filing date of Defendant's application for registration in Austria or (b) Defendant's alleged first use of the mark in Austria or in the U.S. Plaintiff's use of the mark since November 1987 has been continuous and has not been abandoned.


## DEFENDANT'S WRONGFUL ACTS

19.     Defendant agreed in paragraph 3 of the July 14, 2005 Agreement, Exhibit B, to provide Plaintiff with all documents within his possession or control that were requested by Plaintiff that were relevant to the dispute involving the mark Globalaw. Defendant's agreement to produce documents included all documents within his control, which include privileged documents in the possession of his lawyers or former lawyers.

20.     Defendant reneged on his obligation to provide Plaintiff those documents by only making sham efforts to obtain them from his lawyers and by not enforcing his right to obtain those files from his lawyers and former lawyers when they balked at sending them to him.

21.     At no time has Defendant had any rights in or to the service mark "Globalaw" in the United States. Plaintiff, the owner of the Mark, has never given him permission, license, or other authorization to use or reproduce the mark for any purpose.

22.     Defendant and those in concert with him used the mark beginning as early as May or June 1994 on letterheads, curricula vitae, publications, web sites, articles published in print media, and in other ways, all in connection with legal services and all constituting willful and intentional infringement of Plaintiff's Mark.

23.     Defendant and those in concert with him had actual knowledge of Plaintiff's ownership of the Mark since at least January 1996, as a result of Plaintiff filing in the PTO at that time an Opposition to Defendant's attempt to obtain federal registration of the mark Globalaw.

## INJURY TO PLAINTIFFS

24.     Defendant's use of Plaintiff's Service Mark has injured and will continue to injure Plaintiff, Plaintiff's service mark "Globalaw," and the goodwill associated with Plaintiff's Mark.

25.     Defendant's actions were and are likely to cause confusion, mistake, or deception as to the source or origin of services provided by Plaintiff through the use of the Mark, were and are likely to suggest falsely a sponsorship, connection, license, or association between services provided by Defendant and those acting in concert with him, on the one hand, and Plaintiff, on the other hand, and have diverted and/or will divert income and profits from Plaintiff.

26.     Defendant's failure to produce the requested documents within his possession and control

is injuring Plaintiff in its litigation with the U.S. law firms which improperly use the mark Globalaw to promote their legal services. The U.S. law firms erroneously contend they are entitled to use the mark as a result of their prior relationship with Defendant.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

27.    Plaintiff repeats and realleges the allegations set forth in ¶¶ 1-26 of this Complaint.

28.    Defendant breached the contract with Plaintiff, dated July 14, 2005, Exhibit B, by failing to produce the documents Plaintiff requested under the terms of the contract.

29.    That breach of contract has prevented Plaintiff from having documents that, on information and belief, would be important and helpful to Plaintiff in another pending law suit. Plaintiff entered into the agreement with Defendant in good faith belief that Defendant, who is a lawyer and who was represented by lawyers, would faithfully perform his obligations under the agreement.

30.    For Plaintiff time was of the essence and Plaintiff detrimentally relied on Defendant's promise to perform his obligations and, in particular, his obligation to produce the documents. That reliance was a major factor in Plaintiff's consent to dismiss the Boston Complaint. Instead, Defendant procrastinated on performing his obligation and in the eight months that have passed since he signed the agreement, he has sent only one letter of request to the two law firms that had represented him.

31.    In response to Campbell's request for documents, one of the law firms, BSAI, refused to comply, in a letter dated January 13, 2006 (Exhibit E). Although on its face BSAI's excuses were frivolous, Defendant did not insist that BSAI comply with its ethical obligations to produce the requested documents, did not file a grievance against BSAI with the regulatory agency in

Pennsylvania, where BSAI's home office is located, and did not bring a lawsuit to compel BSAI to produce the documents to him.

32.    The other law firm, Jackson Walker, did not even respond to Defendant's single letter. Yet, Defendant failed to insist that Jackson Walker comply with its ethical obligations to produce the requested documents, did not file a grievance against Jackson Walker with the regulatory agency in Texas, where Jackson Walker's home office is located, and did not bring a lawsuit to compel Jackson Walker to produce the documents to him.

33.    Defendant's breach of contract caused Plaintiff damages and will continue to damage Plaintiff's counterclaim against the U.S. law firms because, on information and belief, the documents sought by Plaintiff, which are under Defendant's control and maintained by the U.S. law firms, are proof that Defendant acted in bad faith when he adopted the mark in 1994 and 1995, and the failure to produce those documents has hindered Plaintiff in it litigation in this Court against the law firms.

### SECOND CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENT, FALSE DESIGNATION
### OF ORIGIN, PASSING OFF, AND UNFAIR COMPETITION
### UNDER SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

34.    Plaintiff repeats and realleges the allegations set forth in ¶¶ 1-33 of this Complaint.

35.    The advertisements of Defendant and those acting in concert with him indicating that they are the owners of the service mark Globalaw and have rights in that mark and their use of the mark Globalaw to advertise and promote their legal services are likely to cause confusion, mistake, or deception as to the origin, sponsorship or approval of their services and activities, and thus constitute trademark infringement, false designation of origin, passing off, and unfair competition with respect to Plaintiff's Mark in violation of Section 43(a)(1)(A) of the Lanham

Act, 15 U.S.C. § 1125(a)(1)(A).

36.    Defendant's actions were willful and deliberate and constitute willful infringement of Plaintiff's Service Mark Globalaw, in violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A).

37.    As a direct and proximate cause of the actions, conduct, and practices of Defendant and those acting in concert with him, alleged above, Plaintiff has been damaged and will continue to be damaged in an amount exceeding $100,000.00 but in a specific amount not yet determined.

## THIRD CLAIM FOR RELIEF
## FEDERAL UNFAIR COMPETITION COMPRISING
## FALSE AND MISLEADING STATEMENTS OF FACT
## UNDER SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

38.    Plaintiff repeats and realleges the allegations set forth in ¶¶ 1-37 of this Complaint.

39.    By advertising and promoting that it has rights in the service mark Globalaw, Defendant and those acting in concert with him made false and misleading representations of fact to the public, misrepresenting the nature of its services in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

40.    Defendant's actions were willful and deliberate and constitute willful infringement of Plaintiff's Service Mark "Globalaw," in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(B).

41.    As a direct and proximate result of the actions, conduct, and practices of Defendant and those acting in concert with him, set forth above, Plaintiff has been and will continue to be damaged in an amount exceeding $100,000.00 but in a specific amount not yet determined.

## FOURTH CLAIM FOR RELIEF
## COMMON LAW TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND MISAPPROPRIATION

42.    Plaintiff repeats and realleges the allegations set forth in ¶¶ 1-41 of this Complaint.

43.    Defendant's use of the service mark Globalaw constitutes common law trademark infringement, unfair competition, and misappropriation of Plaintiff's good will under the common law of the District of Columbia and other districts of the United States by reason of which Plaintiff has suffered and will continue to suffer, irreparable injury.

44.    Defendant's actions were willful and deliberate and constitute willful infringement of Plaintiff's Service Mark Globalaw, in violation of the common laws of the District of Columbia and other districts in which plaintiff used the mark.

45.    As a direct and proximate result of the actions, conduct, and practices of Defendant and those acting in concert with him, set forth above, Plaintiff have been and will continue to be damaged in an amount exceeding $100,000.00 but in a specific amount not yet determined.

## PRAYER FOR RELIEF

46.    Wherefore, Plaintiff prays that this Court enter judgment in its favor against the Defendant on each and every claim set forth above and award it relief including but not limited to the following.

      a.    An order requiring Defendant, his former and present lawyers, and others acting in concert with him to produce documents and things referring or relating to

      (1)    the conception of the term "Globalaw,"

      (2)    use of the term "Globalaw" by Carmon & Carmon, Haggai Carmon, or Rakeffet Carmon,

11

(3)     the date of first use of the term "Globalaw" by Defendant in the United States, and

(4)     Defendant's awareness of use of the term "Globalaw" by Carmon & Carmon, Haggai Carmon, or Rakeffet Carmon.

(5)     The awareness by Jackson Walker, L.L.P., and Ballard, Spahr, Andrews & Ingersoll, L.L.P., of use of the term "Globalaw" by Carmon & Carmon, Haggai Carmon, or Rakeffet Carmon, including the first dates of such awareness.

b.     A permanent injunction enjoining Defendant and all persons acting in concert with him:

(1)     From using the service mark "Globalaw" or any mark confusingly similar to that mark, and

(2)     From representing by any means whatsoever, directly or indirectly, that Defendant or any activities undertaken by him or those acting in concert with him are associated with or connected in any way to Carmon & Carmon.

c.     An order requiring that Defendant surrender to Carmon & Carmon all advertisement or promotional materials, letterheads, documents, databases, web sites, curricula vitae, or other media or materials containing the service mark "Globalaw," within its possession or control.

d.     An order directing Defendant to file with this Court and serve on Carmon & Carmon through counsel, thirty days after the date of the entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which he has complied with the injunction.

f.     An order awarding Carmon & Carmon monetary relief including damages

sustained by Carmon & Carmon as a result of Defendant's infringement of the service mark Globalaw in an amount to be determined by the jury and the Court, defendant's profit from use of the mark, treble damages, attorney's fees pursuant to 15 U.S.C. § 1117, and the costs of this action and counterclaim.

g.       An order declaring that the Defendant had never acquired any rights in the mark Globalaw in the U.S., in common law or otherwise, that he never had any right to benefit from its use or license, sell, or transfer any such purported rights in the U.S. to anyone, and that any such license, sale or transfer, if ever made, is null and void ab initio.

h.       An order awarding Carmon & Carmon such further relief as this Court may deem appropriate.

**TRIAL BY JURY IS DEMANDED ON ALL ISSUES TRIABLE BY JURY**

Dated April 26, 2006                    By: _____

John C. Lowe, Bar #427019
ECF # lowej5327
John Lowe, P.C.
59920 Searl Terrace
Bethesda MD 20816
Telephone     301-320-5595
Fax:          301-320-8878
johnlowe@johnlowepc.com

Laurence R. Hefter, Bar # 177402
901 New York Avenue, N.W.
11th Floor
Washington, D.C. 20001-4413
Telephone     202-408-4053
Fax          202-408-4400
laurence.hefter@finnegan.com

Attorneys for Plaintiffs

CARMON & CARMON
V.
DENNIS CAMPBELL

EXHIBITS TO COMPLAINT

# EXHIBIT LIST

Exhibit A    Complaint by Carmon & Carmon v. Dennis Campbell, USDC Mass., CA
             05-10198 PBS

Exhibit B    Agreement, dated July 16, 2005, between Carmon & Carmon, et al. and
             Dennis Campbell

Exhibit C    Letter, dated January 22, 1999, from David Epstein , Director, Office of
             Foreign Litigation, Civil Division, Department of Justice

Exhibit D    Asset Transfer and Consulting Agreement, dated February 28, 2002

Exhibit E    Letter, dated January 13, 2006, From Ballard, Spahr, Andrews & Ingersoll,
             L.L.P. to Dennis Campbell

CARMON & CARMON
V.
DENNIS CAMPBELL

EXHIBIT TO COMPLAINT

# EXHIBIT A

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

RMON & CARMON, a partnership

**DEFENDANTS**

DENNIS CAMPBELL

FILED
IN CLERKS OFFICE

2005 FEB -1 P 4: 19

**(b)** County of Residence of First Listed Plaintiff    Kings County (NY)
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Suffolk County (Mass.)
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED. STRICT OF MASS.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Kevin J. O'Connor (see attachment); Paragon Law Group, LLP
184 High Street, Boston, MA 02110 (617)399-7950

Attorneys (If Known)

05 CV 10198 PBS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question
  (U.S. Government Not a Party)
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity
  (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. § 1332 (diversity); 15 U.S.C. §1125(a).

Brief description of cause:
A suit for violation of federally and state protected trademark rights.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
In excess of $75,000; injunctive relief

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE   Judge Collen Kollar-Kotelly

DOCKET NUMBER 03-CV-950 (U.S.D.C. of DC)

DATE 2/1/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**05 CV 10198 PBS**

CARMON & CARMON, a partnership,      )
                                      )
    Plaintiff,                        )
v.                                    )
                                      )    Case No. _____
                                      )
DENNIS CAMPBELL                       )
Schweigmuhlweg 6A                     )
5020 Salzburg, Austria,               )        **R E C E I V E D**
                                      )          Clerk's Office
    Defendant.                       )           USDC, Mass.
                                      )         Date ___3/1/05___
                                      )         By ____M.P.____
                                                 Deputy Clerk

## COMPLAINT

1.    This is a complaint for trademark infringement, unfair competition, and false advertising under federal, state, and common law. Plaintiff ("Carmon & Carmon") conceived of the service mark "Globalaw" for use in connection with legal services and has used it continuously since at least 1988. Plaintiff brings this complaint because Defendant, subsequent to Plaintiff's first use of the mark "Globalaw," has in the past promoted and, based on information and belief, is now promoting legal services and related services in the United States under the identical service mark, "Globalaw," ("the Service Mark," "the Mark") in violation of Plaintiff's valuable intellectual property rights. The Service Mark is the exclusive property of Plaintiff, and Plaintiff has never given the Defendant permission or license to use the Mark in the United States. On information and belief, Defendant has in the past advertised his services under the Mark on the Internet, in curriculum vitae, in communications with members of the legal profession, and in other public media and publications.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this complaint pursuant to

1

15 U.S.C. §1125(a), 28 U.S.C. §§1338(a) and (b), and 28 U.S.C. §1332 based on diversity of citizenship of the parties. The amount in dispute has not yet been determined but is in excess of $75,000.00. Jurisdiction over the state court claims is appropriate under 15 U.S.C. §1367(a) and principles of pendant jurisdiction.

3.    This Court has personal jurisdiction over the Defendant inasmuch as he is working, is conducting business, and is physically present in this district at the time of service, based on information and belief.   Venue in this district is proper pursuant to 28 U.S.C. §§1391(b) and (c), and because, on Plaintiff's actual knowledge or on information and belief, the Defendant and others working in concert with him have infringed the Mark in this district, as well as elsewhere in the United States.

## THE PARTIES

4.    Carmon & Carmon, a New York law firm comprised of partners Haggai Carmon and Rakeffet Carmon, is the Plaintiff in this action.

5.    Defendant Dennis Campbell ("Campbell" or "Defendant") is, on information and belief, a lawyer admitted to practice in Iowa and New York, and is a citizen of the United States currently residing in Salzburg, Austria. On information and belief, Defendant does business in this district and other districts in the United States and has infringed on Plaintiffs' Service Mark in this district and elsewhere by offering his services under the Mark, by selling and assigning the Mark to a corporation, and by other actions.

## FACTS

6.    Haggai and Rakeffet Carmon are partners in the Carmon & Carmon law firm and sole stockholders in Globalaw, Inc. Plaintiff is the owner of the Service Mark "Globalaw" in the United States. Plaintiff offers and renders legal services under the Mark "Globalaw."

7.    Plaintiff conceived of and began to use the Service Mark in connection with its law and business practice prior to 1988 and incorporated Globalaw, P.C., in 1988.  Plaintiff has continuously used the Mark as an indication of the source of their legal services throughout the United States.

8.    In 1993, Defendant, sent a letter to Plaintiff seeking cooperation and a meeting in New York.  On information and belief, Plaintiff delivered to Defendant information about Plaintiff's law firm.  That information included use of the Mark by Plaintiff.

9.    Subsequently, Carmon & Carmon found out that Campbell had registered the Mark "Globalaw" in Austria,  and had then filed an application to register the Mark in the United States on November 30, 1994, under his own name, for association services, namely promoting the interests of a group of law firms providing legal services on an international basis.

10.    Plaintiff discovered Defendant's application for federal registration of the Mark and timely filed an opposition to the registration.

11.    On March 28, 1994, Plaintiff attempted to file for United States federal registration of the Mark for foreign and international legal services based on its first use of the Mark as of January 22, 1988.  However, due to technical errors, Plaintiff's application was only fully processed and fully filed on February 3, 1995, after Defendant's application for federal registration was received at the United States Patent and Trademark Office ("PTO") in late 1994.

12.    Beginning in 1995, Plaintiff established and operated a web site, www.globalaw.com, to advertise and promote their law practice and solicit business under the Mark.  In 1997, as a result of a letter from Campbell's counsel to Network Solutions, Inc. who controlled the issuance of Internet domain names, Network Solutions suspended the use by Plaintiff of the Internet domain name "globalaw.com" until the dispute over ownership of the

3

Mark was resolved. As a result of that action, which caused Plaintiff to be damaged, Plaintiff acquired and was forced to use another domain name.

13.    On information and belief, Defendant sold or assigned his purported rights in the Mark "Globalaw" in the United States to Globalaw Limited, an offshore corporation registered in the Jersey Isles, which was owned by about 70 law firms around the world and included nine law firms in the United States, some of which are still owners of Globalaw Limited today.

14.    Plaintiff is the senior user of the Mark because it had used the Mark continuously since at least 1988 up to the present time in interstate commerce in the United States, has never abandoned the Mark, and intends to continue to use it actively into the future in the United States. Plaintiff's first use of the Mark in the United States predates Defendant's use of the Mark in the United States.

15.    At no time has Defendant had any rights in or to the Mark. Plaintiff, the owner of the Mark, has never given Defendant permission, license or other authorization to use or reproduce the Mark for any purpose in any location.

16.    On information and belief, in cooperation and concert with Defendant, some of the law firms that have been or are members of the Globalaw Limited network used the Mark beginning as early as 1994 on letterheads, curricula vitae, publications, web sites, articles published in print media, and in other ways to offer and promote their legal services, all constituting infringement of Plaintiff's Mark.

17.    On information and belief, Defendant has infringed Plaintiff's Mark on numerous occasions and in numerous ways.

4

a.    Defendant, knowing of Plaintiff's prior use of the Mark, willfully and intentionally used the Mark in the United States for services the same or closely related to the services offered by Plaintiff under the Mark.

b.    As a result of the encouragement and efforts of Defendant, the law firms that formed Globalaw Limited have also used Plaintiff's Mark, commencing after Plaintiff obtained rights in the Mark, on letterheads, business cards, brochures, curricula vitae, web sites, advertisements published in print media, and in other ways to promote their legal services, all constituting infringement of Plaintiff's Mark.

c.    Defendant formed an alliance of law firms throughout the world, including the United States, to exploit and benefit from the use of the Mark by enhancing the law firms' ability to offer and market their legal services, as a result of which Defendant was unjustly enriched.

## INJURY TO PLAINTIFFS

18.    Defendant's use of Plaintiff's Service Mark has irreparably injured and, if permitted to continue, will continue to irreparably injure Plaintiff, Plaintiff's Mark, and the goodwill associated with Plaintiff's Mark.

19.    Defendant's actions have diluted, and will continue to dilute, the strength, distinctiveness, and selling power of Plaintiff's Mark, causing injury to Plaintiff.

20.    Defendant's actions are likely to cause confusion, mistake, or deception as to the source or origin of legal services provided by Plaintiff through the use of the Mark and are likely to suggest falsely a sponsorship, connection, license, or association between services provided by Plaintiff and services rendered by members of the Globalaw Limited network.

5

## FIRST CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT, FALSE DESIGNATION
## OF ORIGIN, PASSING OFF, AND UNFAIR COMPETITION
## UNDER §43(a) OF THE LANHAM ACT, 15 U.S.C. §1125(a)

21.    Plaintiff repeats and realleges the allegations set forth in ¶¶ 1-20 of this Complaint.

22.    Defendant's use of the mark "Globalaw" in conjunction with services directly and closely related to legal services is likely to cause confusion, mistake, or deception as to the origin, sponsorship or approval of his services and activities, and thus constitute trademark infringement, false designation of origin, passing off, and unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1).

23.    Defendant's licensing and authorizing law firms to use the mark "Globalaw" in connection with offering and marketing legal services is likely to cause confusion, mistake, or deception as to the origin, sponsorship or approval of their services and activities, and thus constitute trademark infringement, false designation of origin, passing off, and unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1).

24.    Defendant's actions were willful and deliberate and constitute willful infringement of Plaintiff's Mark in violation of §43(a) of the Lanham Act, 15 U.S.C. §§1125(a).

25.    As a direct and proximate cause of the actions, conduct, and practices of Defendant alleged above, Plaintiff has been irreparably damaged and will continue to be damaged.

## SECOND CLAIM FOR RELIEF
## FEDERAL UNFAIR COMPETITION COMPRISING
## FALSE AND MISLEADING STATEMENTS OF FACT
## UNDER §43(a) OF THE LANHAM ACT, 15 U.S.C. §1125(a)

26.    Plaintiff repeats and realleges the allegations set forth in ¶¶ 1-25 of this

complaint.

27.    By advertising that he had rights in the mark "Globalaw" in the United States, Defendant made false and misleading representations of fact to the public, misrepresenting the nature of his services and the services of those working in concert with him in violation of §43(a)(1)(B) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B).

28.    Defendant's actions were willful and deliberate and constitute willful infringement of Plaintiff's Mark in violation of §43(a)(1)(B) of the Lanham Act, 15 U.S.C. §§1125(a)(1)(B).

29.    As a direct and proximate result of the actions, conduct, and practices of Defendant and those working in concert with him set forth above, Plaintiff has been and will continue to be irreparably damaged.

### THIRD CLAIM FOR RELIEF
### COMMON LAW TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND MISAPPROPRIATION

30.    Plaintiff repeats and realleges the allegations set forth in ¶¶ 1-29 of this complaint.

31.    Defendant's use of the mark "Globalaw" constitutes common law trademark infringement, unfair competition, and misappropriation of Plaintiff's property and good will under the common law of the Commonwealth of Massachusetts, the District of Columbia, and other districts of the United States by reason of which Plaintiff has suffered and will continue to suffer, irreparable injury.

32.    Defendant's actions were willful and deliberate and constitute willful infringement of Plaintiff's Mark in violation of the common laws of the Commonwealth of Massachusetts, the District of Columbia, and other districts.

7

33.    As a direct and proximate result of the actions, conduct, and practices of Defendant, Plaintiff has been and will continue to be irreparably damaged.

## PRAYER FOR RELIEF

34.    Wherefore, Plaintiff prays that this Court enter judgment in its favor against the Defendant on each and every claim set forth above and award Plaintiff relief including but not limited to the following.

a.    A permanent injunction enjoining Defendant and all persons acting in concert with him:

(1)    From using the service mark "Globalaw" or any mark confusingly similar to that mark, and

(2)    From representing by any means whatsoever, directly or indirectly, that Plaintiff or any activities undertaken by Plaintiff are associated with or connected in any way to Globalaw Limited.

b.    An order requiring that Defendant surrender, erase, delete or destroy all advertisement or promotional materials, letterheads, documents, databases, web sites, curricula vitae, or other media or materials containing the mark "Globalaw."

c.    An order requiring Defendant to post a prominent retraction on any web sites owned or controlled by Defendant, on which Defendant erroneously and without authority advertised and represented that he had any rights in or to the mark "Globalaw," acknowledging that he has no rights in the Mark in the United States and stating that the Mark is owned by Plaintiff in the United States.

d.    An order directing Defendant to file with this Court and serve on Plaintiff through counsel within thirty days after the date of the entry of any injunction, a report in writing and

8

under oath setting forth in detail the manner and form in which he has complied with the injunction.

e.    An order awarding Plaintiff monetary relief including damages sustained by Plaintiff as a result of Defendant's infringement of Plaintiff's mark in an amount to be determined by the jury and the Court, Defendant's profits arising out of the use, sale, and assignment of the mark Globalaw in the United States, treble damages, attorney's fees pursuant to 15 U.S.C. § 1117, and the costs of this action and counterclaim.

f.    An order declaring that Plaintiff is the sole owner of the mark Globalaw in the United States for legal services and is entitled to federal registration of the Mark.

g.    An order awarding Plaintiff such further relief as this Court may deem appropriate.

**TRIAL BY JURY IS DEMANDED ON ALL ISSUES TRIABLE BY JURY**

Dated: February 1, 2005
Boston, MA

Respectfully Submitted,

Kevin J. O'Connor (BBO #555250)
Mayeti Gametchu (BBO #647787)
James W. Bell (BBO #658123)
PARAGON LAW GROUP, LLP
184 High Street, 4th Floor
Boston, MA 02110
Telephone:    617-399-7950
Fax:    617-399-7955
paragonlaw.com

Attorneys for Plaintiffs
CARMON & CARMON

OF COUNSEL

John C. Lowe
JOHN LOWE, P.C.
5920 Searl Terrace
Bethesda, MD 20816-2023
Telephone:    301-320-5595
Fax:    301-320-8878
johnlowe@johnlowepc.com

9

CARMON & CARMON
V.
DENNIS CAMPBELL

EXHIBIT TO COMPLAINT

# EXHIBIT B



## AGREEMENT

On this _14th_ day of July, 2005, Dennis Campbell ("Campbell") and Carmon & Carmon and Globalaw, Inc., ("Carmon") entered into this Settlement Agreement on the following terms and conditions.

1.      Campbell, as a part of his execution of this Agreement, will execute under oath the Affidavit appended to this Agreement and incorporated by reference into this Agreement.

2.      Campbell will appear and offer testimony at whatever depositions, hearings, proceedings, or trials arising out of the Globalaw litigation dispute pending in Washington D.C. at which he is requested to testify by counsel for Carmon. Such testimony by Campbell must at all times be truthful and correct. As to any such appearances in the United States requested by Carmon, Carmon shall pay the first $650.00 of Campbell's travel expenses for each trip, and Campbell shall pay the remainder.

3.      Campbell will speak with counsel for Carmon upon prior arrangement with Campbell's counsel, if he has a lawyer, or arrangement with Campbell, himself, if he does not have a lawyer, and will be cooperative and informative in response to requests for information and discussion relevant to the Globalaw dispute, orally or in writing, at Carmon's option. Campbell may have an attorney participate in the conversations or drafting of written answers, if he chooses. Campbell will provide Carmon with any documents requested by Carmon relevant to the Globalaw dispute that Campbell has in his possession or control.

4.      Carmon will dismiss Campbell with prejudice as a party to the action pending in the United States District Court for the District of Massachusetts, captioned <u>Carmon & Carmon v. Dennis Campbell</u>, CA No. 05-10198 PBS, and the action pending in the United States District Court for the District of Columbia, captioned <u>Globalaw Limited v. Carmon & Carmon Law Office, et</u> al, No. 1:03CV00950 (CKK), and will not attempt to serve him again as a party so long as Campbell complies with all his obligations under this Agreement and does not change the factual content of his appended affidavit. Should Campbell violate this Agreement or any of its terms, Carmon may file and serve on Campbell a complaint containing all the allegations and requests for relief as contained in the pending Boston complaint cited above and any other appropriate allegations and requests for relief but may file it in the District of Columbia and Campbell will have and raise only defenses that he had as of February 2, 2005.

5.      Campbell agrees that Mark Schonfeld, an attorney in Boston, MA, is designated by him as an irrevocable agent for purposes of Campbell being served by Carmon or either partner in Carmon & Carmon with subpoenas or other legal documents

relating to the trademark GLOBALAW, including but not limited to a complaint and summons in the event Campbell fails to comply with any of his obligations under this Agreement. This designation expires on July 30, 2007.

Carmon & Carmon and Globalaw, Inc.

By

_____          _____
Dennis Campbell                     Haggai Carmon

REPUBLIC OF AUSTRIA
CITY OF VIENNA          }
EMBASSY OF THE          } SS
UNITED STATES OF AMERICA }

**Notarial Certificate**

This 14ᵗʰ day of July, 2005, Dennis Campbell appeared before me,

Barbara I. Ensslin                  a _____

and acknowledged his signature to this agreement.

_____
Barbara I. Ensslin
Consul
MY COMMISSION EXPIRES: indefinite

FOR THE CONTENTS OF THE FOREGOING
(ANNEXED DOCUMENT),
INCLUDING AFFIANT'S TITLE,
I ASSUME NO RESPONSIBILITY.          **Notarial Certificate**

This 15ᵗʰ day of ~~July~~ August, 2005, Haggai Carmon appeared before me,

Haggai Carmon                       a _____

and acknowledged his signature to this agreement.

Karen L. Frankel
_____

```
KAREN LABY FRANKEL
Notary Public, State of New York
No. 31-4649903
Qualified in New York County
Commission Expires March 30, 1988
         February 29, 2006
```

## AFFIDAVIT OF DENNIS CAMPBELL

Now comes Dennis Campbell and, having first been placed under oath, swears that the following facts are true and correct.

1.      In 1994, when I filed for federal registration of the service mark GLOBALAW in the United States Patent and Trademark Office, I believed that I had rights in the United States to the service mark GLOBALAW based on my use of the mark, giving me common law rights to the mark.

2.      On February 28, 2002, when I signed the Asset Transfer and Consulting Agreement between Globalaw Limited and myself, assigning to Globalaw Limited certain rights to the service mark GLOBALAW in certain countries other than the United States (incorporating by reference herein the meaning of "Transferred Assets" contained in Exhibit A to said Agreement), I still owned all the rights in those certain countries and continued as the named applicant for registration of the mark in the US.

3.      I did not believe that I transferred, nor did I intend or purport to transfer, to Globalaw Limited or anyone else, on February 28, 2002 or at any other time, any ownership rights in the United States to the service mark GLOBALAW because I believed that I had no rights capable of transfer.

4.      On March 1, 2002, one day after I signed the Asset Transfer and Consulting Agreement between Globalaw Limited and myself, assigning to Globalaw Limited certain rights to the service mark GLOBALAW in certain countries other than the United States, I no longer owned the rights in those certain countries but continued as the named applicant for registration of the mark in the US.

5.      After January 1, 2002, the effective date of the Asset Transfer and Consulting Agreement between Globalaw Limited and myself, I never used the service mark GLOBALAW as a service mark or otherwise in the United States.

6.      Since February 28, 2002, and to date, I have not assigned, licensed, or otherwise transferred ownership of any of the rights to the GLOBALAW mark in the United States to anyone.

7.      Because I never used the GLOBALAW mark in the United States after February 28, 2002, and do not intend to use the GLOBALAW mark in the United States in the future, by that date I had given up all rights to the mark GLOBALAW in the United States, ceased to claim and currently do not claim any rights to the GLOBALAW mark in the United States, and do not intend to claim any such rights in the future.

8.  To the best of my knowledge and belief, the "Globalaw, the International Law Group", that I created and administered, ceased to exist by February 28, 2002.

I make this affidavit under the penalty of perjury under the United States Code.

Dennis Campbell

REPUBLIC OF AUSTRIA
CITY OF VIENNA
EMBASSY OF THE
UNITED STATES OF AMERICA } SS

### Notarial Certificate

This _14th_ day of July, 2005, Dennis Campbell appeared before me,
_Barbara I. Ensslin_____, a notary public, Clerk of Court, or officer of
the United States ~~Embassy~~ Consul authorized to administer oaths (delete inapplicable
description), and, after I placed him under oath, he swore that the foregoing Affidavit of
Dennis Campbell is true and correct.

FOR THE CONTENTS OF THE FOREGOING
(ANNEXED DOCUMENT),
INCLUDING AFFIANT'S TITLE,
I ASSUME NO RESPONSIBILITY.

Barbara I. Ensslin
Consul

MY COMMISSION
EXPIRES: indefinite

CARMON & CARMON
V.
DENNIS CAMPBELL

EXHIBIT TO COMPLAINT

# EXHIBIT C



U.S. Department of Justice

DEpstein:eew
202/514-7455

Washington, D.C. 20530

January 22, 1999

To Whom it May Concern:

This is to acknowledge that we have been retaining Carmon & Carmon and its division Globalaw in two major capacities. The first area of service is foreign law. We have been using them as one of our regular outside lawyers on foreign matters since December, 1985. We have asked Carmon & Carmon/Globalaw to render opinions concerning foreign law and to appear in courts in lawsuits to which the United States is a party. We have also recommended their services to other U.S. Government agencies (State Department, Internal Revenue Service, Securities and Exchange Commission, National Endowment for the Arts, Office of Thrift Supervision, Federal Deposit Insurance Corporation, U.S. Embassy in Tel Aviv, and the U.S. Postal Inspection Service). In this capacity, Carmon & Carmon/Globalaw have made significant accomplishments.

The second area of Carmon & Carmon/Globalaw's professional services for the U.S. Government is in international matters, which include asset recovery, civil forfeiture, legal intelligence, evidence gathering, and civil legal investigations, including money laundering matters. U.S. Government agencies have assigned them with the worldwide responsibility (except for the U.S.) of complex multi-national and multi-million dollar cases which have required work in more than 30 foreign countries. Carmon & Carmon/Globalaw lawyers have traveled frequently on official U.S. Government business.

Their work for the Justice Department, in both areas, has been highly professional and successful. They have proven to be excellent lawyers with innovative minds. I have also received compliments on their work from many U.S. Government agencies, including Internal Revenue, State Department, several U.S. Attorney's Offices, National Endowment for the Arts, and the U.S. Postal Inspection Service.

We intend to continue our relationship and to engage Carmon & Carmon/Globalaw in the future.

Sincerely yours,

*David Epstein*

DAVID EPSTEIN
Director
Office of Foreign Litigation
Civil Division

CC 00267

CARMON & CARMON
V.
DENNIS CAMPBELL

EXHIBIT TO COMPLAINT

# EXHIBIT D

*8*

## EXHIBIT B

## ASSET TRANSFER AND CONSULTING AGREEMENT

### Date 28 February 2002

This Asset Transfer and Consulting Agreement (this "Agreement"), dated today but to take effect from January 1, 2002 (the "Effective Date"), is made by and between Dennis Campbell, c/o Yorkhill Limited Inc., PO Box 19, A-5033 Salzburg, Austria ("Assignor"), and Globalaw Limited, a Jersey corporation ("Assignee"). Assignor and Assignee are referred to individually herein as a "Party" and collectively herein as the "Parties."

### Background

A.     Assignor is the owner of all right, title and interest throughout the world, whether registered or unregistered, in the service mark GLOBALAW and related service marks set forth on Schedule A, attached hereto and incorporated herein (the "Marks"), and the goodwill associated with and symbolized by the Marks;

B.     Assignor is the founder and has managed the secretariat of Globalaw, a previously unincorporated association of law firms, and has used the Marks in connection with the business and affairs of the association;

C.     Assignor has established a web site on the Internet located at www.globalaw.net (the "Web Site") for the Globalaw association and registered the Internet domain names set forth on Schedule A (the "Domain Names") for use in connection with the Web Site.

D.     The Globalaw association has formed Assignee to continue the business and affairs of the association;

E.     Assignee is desirous of acquiring all right, title, and interest in and to the Marks the Web Site, the Domain Names and certain other assets more fully described in Section 1 together with the goodwill of the Globalaw association symbolized by the Marks (collectively, the "Transferred Assets");

F.     Assignor has agreed to the Transferred Assets;

G.     In connection with the acquisition by Assignee of the Transferred Assets, Assignee desires to assure itself that, as of the closing of the transactions contemplated by the Agreement, the experience and skill of the Assignor will remain available to Assignee; and

H.     The Assignor is willing to provide services to Assignee during the Term (as defined herein) upon the terms and conditions set forth herein;

DEPOSITION EXHIBIT
CAMPBELL
V
spherion

C3324

Globalaw Limited
0820

### Agreements

In consideration of the mutual covenants and agreements contained herein, the Parties hereto, intending to be legally bound, hereby agree as follows:

1. **Assets To Be Transferred.**

    1.1    Marks. Upon the terms and subject to the conditions of this Agreement, on the Effective Date, Assignor hereby assigns, transfers, conveys and delivers to Assignee, and Assignee accepts from Assignor all right, title, and interest in and to the Marks, together with all renewals thereof, income, royalties, damages and payments now or hereafter due and/or payable with respect thereto, including without limitation damages and payment for past or future infringements thereof, and the goodwill associated with and symbolized by the Marks.

    1.2    Web Site. Upon the terms and subject to the conditions of this Agreement, on the Effective Date, Assignor hereby assigns, transfers, conveys and delivers to Assignee, and Assignee hereby accepts from Assignor the Web Site and all of the assets, whether tangible and intangible, of the Assignor used in, or necessary to, the operation or support of the Web Site (the "Web Site Assets"), consisting of (i) the Domain Names "globalaw.net" and their associated registration with Network Solutions, Inc. or any other domain name registry and all web sites and web pages related thereto, (ii) all media, devices and documentation related to the Web Site and its component parts, and (iv) all proprietary information, software, systems or models, databases, technology rights and licenses, proprietary rights, know-how, techniques, procedures, policies and processes currently being used in, or necessary to, the operation or support of the Web Site.

    1.3    Organization Records. Upon the terms and subject to the conditions of this Agreement, on the Effective Date, Assignor hereby assigns, transfers, conveys and delivers to Assignee, and Assignee hereby accepts from Assignor all the organization records, including the membership records, identified in Exhibit A (the "Organization Records").

    1.4    Membership Dues. Upon the terms and subject to the conditions of this Agreement, on the Effective Date, Assignor hereby assigns, transfers, conveys and delivers to Assignee, and Assignee hereby accepts from Assignor the right to all Globalaw membership dues for the year 2002 and beyond.

    1.5    Contracts. Upon the terms and subject to the conditions of this Agreement, and effective December 31, 2001, Assignor will assign, transfer, convey and deliver to Assignee, and Assignee will accept from Assignor all of the contracts identified in Exhibit A (the "Contracts").

    1.6    Other Assets. Upon the terms and subject to the conditions of this Agreement, Assignor hereby assigns, transfers, conveys and delivers to Assignee, and Assignee hereby accepts from Assignor any other assets used in the management and operations of Globalaw and identified in Exhibit A of this Agreement (the "Other Assets"). The Assignee will accept the Other Assets in "as is" condition.

EMCA-27406

C3325

**Globalaw Limited**
**0821**

2.    <u>Liabilities.</u>

2.1    <u>Assumed Liabilities.</u>  With effect from December 31, 2001, Assignee will assume and become responsible for the liabilities that arise on or after December 31, 2001 under the Contracts (defined below) assigned as part of the Transferred Assets (the "Assumed Liabilities").

2.2    <u>Excluded Liabilities.</u>  Assignee will not assume or have any responsibility with respect to any obligation, liability or debt of Assignor or its assets, whether known or unknown, liquidated or unliquidated, fixed or contingent, arising by operation of law or otherwise, other than the Assumed Liabilities, and this Agreement shall not be construed as an undertaking on the part of Assignee to pay or discharge any obligation, liability or debt of Assignor other than the Assumed Liabilities.

2.3    <u>Employment Obligations.</u>

(a)    It is agreed that Assignee shall not assume any of the liabilities of Assignor under employment agreements.  Assignor therefore undertakes either to terminate all employment agreements related to the secretariat or to offer such employees alternative positions in his organizations outside the secretariat prior to the Effective Date.

(b)    Assignor further undertakes, should employees of Assignor claim that as of the Effective Date they are employed with Assignee, to indemnify and hold Assignee harmless upon first request against and in respect of any claim or assertion of liability which is made or asserted by any employee of Assignor against Assignee based on a transfer of employment to the Assignee.  Such indemnification shall include all expenses of Assignee incurred with such employees including, without being limited to, wages, salaries, reasonable counsel fees, redundancy payments and all costs incurred with the termination of such employees' employment.

3.    <u>Consideration</u>

3.1    <u>Payments.</u>  As consideration for the Transferred Assets, Assignee agrees to pay Assignor the sum of $30,000 to be paid in three (3) annual installments of $10,000 in March 2002, March 2003 and March 2004.

3.2    <u>Pledge of Transferred Assets.  As security for the payment of amounts due under Section 3.1, Assignee hereby grants as continuing security for the payment or discharge when due of the Payments by way of first legal charge over the Transferred Assets and/or the proceeds of any sale or other disposition of the Transferred Assets.</u>

4.    <u>Secretariat</u>

4.1    <u>Secretariat.</u>  It is agreed  that the Assignor has continued to manage the secretariat of the Assignee until December 31, 2001 for no additional consideration.

4.2    <u>Transition.</u>  During the Transition Period, the Assignor confirms that he has not entered into any transaction outside of the ordinary course of business of

C3326

Globalaw Limited
0822

Globalaw on behalf of Globalaw. It is noted that the Assignor has used the Transferred Assets necessary for the normal management and operations of Globalaw up to December 31 2001. The Assignor confirms that he has not entered into any contract or arrangement purporting to bind the Assignor.

4.3    Membership Dues. The Assignor has as and, if requested by Assignee, continued to collect all Globalaw membership dues until December 31, 2001. On or within 5 days of the date of this Agreement, Assignor will transfer all Globalaw membership dues that have been paid to it for the year 2002 (the "Prepaid 2002 Dues"), identified on Exhibit A, to Assignee. Upon Assignee's request, Assignor will transfer any Globalaw membership dues that have been paid for the year 2002 to the Assignee prior to December 31, 2001. Assignor may retain all Globalaw membership dues paid for the year 2001.

4.4    Unpaid Membership Dues. Assignor will notify Assignee if any Globalaw membership dues for the year 2001 are due and owing as of December 31, 2001 (the "Unpaid 2001 Dues"), identified on Exhibit C. If Assignor notifies Assignee of Unpaid 2001 Dues, Assignee will continue to attempt to collect the Unpaid 2001 Dues. Assignee will transfer any Unpaid 2001 Dues it collects to Assignor. Assignee will give collection of Unpaid 2001 Dues from members who have Unpaid 2001 Dues priority over the collection of Globalaw membership dues for the year 2002 from such members.

5.    **Consulting Arrangement**

5.1    Services. The Assignor agrees to perform such consulting, advisory and related services to and for the Assignee as may be reasonably requested from time to time by Assignee, including, but not limited to, assistance in identifying and cultivating members and advice regarding past practices and commercial relationships of Globalaw, during the Term.

5.2    Term. The consulting arrangement shall be for the period commencing on January 1, 2002 and ending on December 31, 2006 (the "Term"). The Term commenced on January 1, 2002 without any further action on the part of either Assignee or the Assignor.

5.3    Consulting Fees. Assignee shall pay to the Assignor consulting fees of $15,000 per year during the Term. Assignor's consulting fees for any calendar year after December 31, 2001 will be reduced by any amount that he or any affiliated organization is paid with respect to such calendar year to manage the secretariat of the Assignee.

5.4    Reimbursement of Expenses. Assignee shall reimburse Assignor for all reasonable and necessary travel expenses incurred or paid by the Assignor in connection with, or related to, the performance of his services under this Agreement provided, however, that all such travel expenses are approved in advance by Assignee. The Assignor shall submit to Assignee itemized monthly statements, in a form satisfactory to Assignee, of such travel expenses incurred in the previous month. Assignee shall pay to the Assignor all such reimbursement amounts shown on each such statement within 30 days after receipt thereof.

Assignor must pay for all other expenses incurred or paid by the Assignor in connection with, or related to, the performance of his services under this Agreement.

        5.5     Benefits. The Assignor shall not be entitled to any of the benefits, coverages or privileges, including, without limitation, social security, unemployment, medical or pension payments, made available to employees of Assignee.

        5.6     Termination.

        (a)     If the Assignor dies or becomes disabled during the Term, this Agreement shall terminate automatically.

        (b)     If either Party is in material breach of its obligations under this Agreement and such breach is not cured within 15 days of notice of such breach by the non-defaulting Party, then the non-defaulting Party may, in addition to any other rights it may have at law or in equity, terminate this Agreement by giving notice of such termination the defaulting Party.

        (c)     Upon a termination of this Agreement, the Assignor shall be entitled to payment for services performed and travel expenses incurred prior to the date of termination.

        (d)     The representations, warranties and indemnities contained in the Agreement and the Assignee's obligations under Sections 3.1 and 3.2 shall survive any termination of this Agreement.

        5.7     Cooperation. The Assignor shall use his best efforts in the performance of his obligations under this Agreement. Assignee shall provide such access to its information and property as may be reasonably required in order to permit the Assignor to perform his obligations hereunder. The Assignor shall cooperate with Assignee's personnel, shall not interfere with the conduct of Assignee's business and shall observe all rules, regulations and security requirements of Assignee.

        5.8     Confidentiality and Non-Compete.

        (a)     Confidential Information. The Assignor acknowledges that by reason of his consulting relationship with Assignee, and his prior employment relationship with Globalaw, he has and will hereafter, from time to time during the Term, become exposed to and/or become knowledgeable about proposals, plans, practices, systems, programs, processes, methods, techniques, research, records, supplier sources, customer lists, and other forms of business information which are not known to Assignee's competitors and which are not recognized as being encompassed within standard business or management practices and which are kept secret and confidential by Assignee (the "Confidential Information"). The Assignor therefore agrees that at no time during or after the Term will he disclose or use the Confidential Information, or any information related to the assets transferred to Assignee from Globalaw under the Agreement, except to the extent such information becomes public through no fault of the Assignor, as required by law, as authorized by the Assignee, or as may be required in the prudent course of business for the benefit of Assignee.

C3328

Globalaw Limited
0824

(b)    Non-Compete.  In consideration of the mutual terms and agreements set forth in this Agreement, Assignor hereby agrees that, while Assignor is providing consulting services to Assignee, neither he nor any organization or entity with which he is affiliated will create, establish, support, or assist another international network of commercial law firms.  During the term of this Agreement, neither Assignor nor any organization or entity with which he is affiliated will (1) recruit any member of Globalaw to join another international network of commercial law firms, (2) solicit, induce, or attempt to solicit or induce any member of Globalaw to terminate its membership in Globalaw, or (3) solicit, divert, or take away, or attempt to solicit, divert, or take away, any prospective members of Globalaw.  During the term of this Agreement, Assignor will continue to give priority to Globalaw members when he is asked by third parties to recommend firms for business referrals.  It is understood and accepted that this provision neither restricts Assignor in the execution of his responsibilities as Director of the Center for International Legal Studies nor restrains Assignor in the continued offering of his services as a legal and business consultant to individual law firms, law schools, educational associations, corporations, and government entities.

(c)    Remedies.  Assignee and the Assignor confirm that the restrictions contained in Sections 5.8(a) and 5.8(b) hereof are, in view of the nature of the business of Assignee, reasonable and necessary to protect the legitimate interests of Assignee and that any violation of any provision of Section 5.8(a) or 5.8(b) will result in irreparable injury to Assignee.  The Assignor hereby agrees that, in the event of any breach or threatened breach of the terms or conditions of this Agreement by the Assignor, Assignee's remedies at law will be inadequate and, in any such event, Assignee shall be entitled to commence an action for preliminary and permanent injunctive relief and other equitable relief in any court of competent jurisdiction.  The Assignor further irrevocably consents to the jurisdiction of any court located in England over any suit, action or proceeding arising out of or relating to this Section 5.8(c) and hereby waives, to the fullest extent permitted by law, any objection that he may now or hereafter have to such jurisdiction or to the laying of venue of any such suit, action or proceeding brought in such a court and any claim that such suit, action or proceeding has been brought in an inconvenient forum.

(d)    Modification of Terms.  If any restriction in this Section 5.8 is adjudicated to exceed the time, geographic, service or other limitations permitted by applicable law in any jurisdiction, the Assignor agrees that such may be modified and narrowed, either by a court or Assignee, to the maximum time, geographic, service or other limitations permitted by applicable law so as to preserve and protect Assignee's legitimate business interest, without negating or impairing any other restrictions or undertaking set forth in the Agreement.

5.9    Independent Contractor Status.  The Assignor shall perform all services under this Agreement as an "independent contractor" and not as an employee or agent of Assignee.  The Assignor is not authorized to assume or create any obligation or responsibility, express or implied, on behalf of, or in the name of, Assignee or to bind Assignee in any manner.  Assignor is responsible for all tax due on any payments he receives pursuant to this Agreement.

6.    Representations and Warranties of Assignor.  Assignor unconditionally represents and warrants to Assignee that as of the Effective Date:

6.1    Transferred Assets. Assignor has good title to the Transferred Assets and Assignor will transfer and convey the Transferred Assets to Assignee free and clear of all liens, pledges, charges, title retention, rights of third parties or security agreements, other than the liens or encumbrances set forth on Exhibit B hereto.

6.2    Marks and Domain Names. Assignor is the sole owner of the Marks and Domain Names, and has used the Marks and Domain Names exclusively in connection with the business and affairs of the Globalaw association.

6.3    Contracts. Exhibit A sets forth all contracts and other agreements to which Assignor is a party, which Assignee is assuming hereunder. Assignor has delivered to Assignee a correct and complete copy of each Contract. With respect to each such Contract: (a) the Contract is a legal, valid, binding and enforceable obligation of Assignor and is in full force and effect; (b) the Contract will continue to be in full force and effect on identical terms following the consummation of the transactions contemplated hereby; (c) Assignor is not, and to his knowledge no other party thereto is, in material breach or default, and, to the knowledge of Assignor, no event has occurred which with notice or lapse of time or both would constitute a material breach or default, or permit termination, modification or acceleration, under the Contract; (d) Assignor has not, and to its knowledge no other party thereto has, repudiated any material provision of the Contract; (e) all amounts due and owing under the Contracts as of December 31, 2001 will be paid by Assignor and (f) except as set forth on Exhibit B, each such Contract may be assigned by Assignor without the consent of the other party thereto.

6.4    Non-Contravention, Approvals.

(a)    This Agreement and all other agreements to be executed and delivered by Assignor as contemplated by this Agreement have been duly executed and delivered by Assignor, and, assuming the due authorization, execution and delivery hereof and thereof by Assignee, each constitutes a valid and legally binding agreement of Assignor enforceable against him or any affiliated organization in accordance with its terms, except that such enforcement may be subject to (i) bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting or relating to enforcement of creditors' rights generally and (ii) general equitable principles.

(b)    The execution and delivery of this Agreement does not violate, conflict with or result in a breach of any material provision of, or constitute a material default (or an event which, with notice or lapse of time or both, would constitute a material default) under, or result in the termination of, or accelerate the performance required by, or result in a right of termination or acceleration under, or, except as provided in Section 3.2, result in the creation of any lien, security interest, charge or encumbrance upon any of the Transferred Assets under the terms, condition or provisions of any statute, law, ordinance, rule, regulation, judgment, decree, order, injunction, writ, permit or license of any court or governmental authority known by Assignor to be applicable to it or any of the Transferred Assets.

(c)    No declaration, filing or registration with or notice to, or authorization, consent or approval of, any governmental or regulatory body or authority is known

EMCA-27406

C3330

Globalaw Limited
0826

by Assignor to be necessary for the execution and delivery of this Agreement or the consummation by Assignor of the transactions contemplated by this Agreement.

6.5    Litigation. Except as disclosed in Exhibit B, there are no claims, suits, actions or proceedings, including any labor-related proceeding or actions, pending or, to the knowledge of Assignor, threatened against or relating to Assignor before any court, governmental department, commission, agency, instrumentality or authority or any arbiter which could reasonably be expected, either alone or in the aggregate with all such claims, actions or proceedings, to cause a material adverse effect to Assignor or which would prohibit or restrict the consummation of the transactions contemplated by this Agreement.

7.    Further Assurances. From time to time after the Effective Date, at either Party's request, the other Party will execute and deliver such other and further instruments of conveyance, assignment and transfer, and take such other action, as the requesting Party may reasonably request for the more effective conveyance and transfer of the Transferred Assets and/or assumption of the Assumed Liabilities.

(a)    Assignor hereby agrees that he will from time to time, if requested by the Assignee or the successors or assigns of the Assignee, execute, acknowledge and deliver, or cause to be executed and delivered to Assignee or its successors or assigns such and all further acts, transfers, assignments, transfer documents, powers and assurances of title and additional papers and instruments that may be necessary or desirable to carry out the intent hereof and to vest in Assignee the entire right, title and interest of Assignor in and to the Marks throughout the world.

(b)    Assignor agrees that he will assist Assignee or its successor or assigns with applications to register any of the Marks in any jurisdiction in the world where they are not now registered including, without limitation, helping to establish priority of use or satisfy any other predicates for registration.

(c)    Assignor also agrees that he will assist Assignee or its successor or assigns with the defense of the Marks in any legal action, now pending or later instituted in any jurisdiction in the world including, without limitation, helping to establish priority of use.

8.    Closing.

The closing for the transfer of the Marks, the Web Site, the Web Site Assets and the Organization Records contemplated by this Agreement shall be deemed to occur on the Effective Date. The closing for the transfer of the Contracts and Other Assets contemplated by this Agreement shall be deemed to have occurred on December 31, 2001.

9.    Fees and Expenses.

The Parties shall share equally all fees and expenses incurred in consummating the transactions described in this Agreement; provided that each Party shall be responsible for its own legal and other professional fees, except for any professional fees the Parties have agreed to share.

10.    Notices.

EMCA-27406

C3331

Globalaw Limited
0827

All notices and other communications in regard hereto shall be validly given or sent if in writing and delivered personally, or sent by facsimile with confirmation received, or sent by registered or certified mail, or by commercial carrier with verification or confirmation of delivery provided, to the last known address of the addressee, or to such other address as any Party may designate to the others in writing.

11.     Governing Law.

The validity, performance and enforceability of this Agreement shall be governed by the laws of England, without giving effect to the principles of conflicts of laws of England or any other jurisdiction.

12.     Miscellaneous.

This Agreement sets forth the entire understanding and agreement among the Parties hereto with respect to the subject matter hereof and supersedes any prior understanding between the Parties hereto. There are no representations, understandings or promises related to the subject matter of this Agreement other than as expressly set forth in this Agreement. This Agreement cannot be altered, changed, modified or amended except in writing signed by the Parties. Neither Party may assign its rights and obligations under this Agreement, without the prior written consent of the other Party hereto. If any provision of this Agreement should be invalid or unenforceable, such invalidity or unenforceability will not, in any manner, affect the continued validity and enforceability of the remaining provisions of this Agreement. The captions contained in this Agreement are not a part of this Agreement, but are for the convenience of the Parties only and do not in any way modify any provision of this Agreement. This Agreement will bind and inure to the benefit of the Parties hereto and their respective successors and permitted assigns. The waiver by a Party of a breach or violation of any provision of this Agreement will not operate or be construed as a waiver of any other or subsequent breach or violation hereof.

13.     Severability.

In the event any provision or portion of this Agreement shall be determined to be invalid or unenforceable for any reason, the remaining provisions of this Agreement shall remain in full force and effect to the fullest extent permitted by law.

14.     Counterparts.

This Agreement may be executed in one or more counterparts, all of which taken together will constitute one instrument.

EMCA-27406

**Signatures**

The Parties have executed this Asset Transfer and Consulting Agreement as of the Effective Date.

**DENNIS CAMPBELL**, as Assignor

By: _____
Name: Dennis Campbell

**GLOBALAW LIMITED**, as Assignee

By: _____
Name: C. Baird Brown
Title: President

BMCA-27406

C3333

<u>EXHIBIT A</u>

**Transferred Assets**

A.    **Marks**

<u>Argentina</u>

No Trade mark Application/Registration to date.

<u>Australia</u>

<u>Particulars</u>

| | |
|---|---|
| Registration No. | 647,461 (as per letter 3 October 1996 by J. Scott Evans, Attorney-at-Law) |
| Reg. Date | Not Available |
| Class | 42 |

<u>Notes</u> -        Awaiting Cert. of Registration to be sent from Attorneys.

<u>Austria</u>

<u>Particulars</u>

| | |
|---|---|
| Registration No. | 156,801 |
| Reg. Date | 17 February 1995 |
| Class(es) | 35, 41, 42. |

<u>Notes</u>

Under the Madrid Arrangement, the following countries are given priority in Service Mark Application as of 3 February 1995 – Beneiux, Egypt, France, Germany, Hungary, Italy, Liechtenstein, Monaco, Morocco, Poland, Portugual, Spain, Switzerland

Egypt – Protection of Service mark denied as the application for legal services under Class 42 was filed under the name of Dr. Lothar Hoffman, Attorney.
Poland – Registration rejected because of Class 42 clause.

Spain – Protection of Service Mark granted under Classes 35 and 41. Class 42 was rejected. (Please note that this application was made in the name of Dennis Campbell)

Switzerland – Service Mark Protection rejected.

PHL_A #1524406 v6EMCA-27406

C3334

**Globalaw Limited**
**0830**

## Bahamas

### Particulars

| | |
|---|---|
| Application No. | 18,937 |
| Reg. date | 19 September 1997 |
| Class No | 39 |

## Barbados

No Application/Certificate of Registration

## Benelux

| | |
|---|---|
| Registration No. | 811675 |
| Reg. Date | 28 August 1996 |
| Class | 42 |

## Bolivia

| | |
|---|---|
| Registration No. | 64003 – C |
| Reg. Date | 26 May 1997 |
| Class | 42 |

## Brazil

| | |
|---|---|
| Registration No. | 81812942 |
| Reg. Date | 12 December 1994 |
| Class | 40.30 |

## Canada

| | |
|---|---|
| Application No. | 77,069 |
| Filed | 11 November 1994 |

### Notes

Counter Statement was filed on the 12 September 1996 by S & E Management Ltd. To date, matter remains unresolved.

EMCA-27406

C3335

Globalaw Limited
0831

## Channel Islands (Jersey)

Particulars – On 12 August 1996, the Service Mark entered in the United Kingdom Register of Trade Marks under No. 2004333 was registered in Part A of the Register of Trade Marks kept in pursuance of Article 3 of the Trade Marks (Jersey) Law under TM 6871 in the name of DENNIS CAMPBELL in respect of services comprised in the United Kingdom registration.

Registration Certificate 14 August 1996

## Chile

Particulars

Application No.        325 351
Class                       42

Notes

On 25 August 1999, the application was accepted to registration. Further to be noted that there was a Statement of Opposition filed by Prosersa S.A. which was rejected. There is no evidence that an appeal has been filed. Thus, processing of the Service Mark application can be continued.

## Costa Rica

Particulars

Registration Cert. No.      103 557
Registration Date           3 September 1997
Class No.                   42

## Cyprus

Particulars

Trademark registration pending.

Notes

The Globalaw trademark was accepted for registration on December 13, 2001. If no objection is filed, the registration will be final within 45 days.

EMCA-27406

C3336

Globalaw Limited
0832

## Denmark

### Particulars

| | |
|---|---|
| Registration No. | UR. 01.367 1995 |
| Registration Date | 24 February 1995 |
| Renewal Date | February 24, 2005 |
| Class No. | 42 |

## Ecuador

### Particulars

Application pending.

## Egypt

### Notes

A letter of 8 August 1996 from Melinda M. Lord of the Kamel Law Office states that GLOBALAW was registered in Egypt under WIPO registration 17 February 1995 and is good for 20 years. Though no specific reference was made, it is assumed that the registration was effected under Classes 35 and 41. Class 42 was categorically denied.

## Finland

### Particulars

| | |
|---|---|
| Registration No. | 13731 |
| Registration Date | 21 August 1995 |
| Renewal Date | 21 August 2005 |
| Class | 42 |

## France

### Particulars

Application No. 21/06. 51.018 pending

## Germany

### Notes
By letter of 17 September 1997 from Martin Wolf of Huth Dietrich Hahn, pursuant to Article 4 of the Madric Convention, the GLOBALAW is protected in Germany as if it were registered with the national office, the international registration of the trade mark being extended to Germany.

EMCA-27406

C3337

Globalaw Limited
0833

## Greece

Notes

No registration to date.  An amended Power of Attorney is required to proceed with the formal application.

## Hong Kong

Particulars

| | |
|---|---|
| Registration No. | B14844 of 1999 |
| Reg. Date | 1 July 1996 |
| Class | 42 |

## Indonesia

Particulars

No registration to date.

## Iran

Particulars

No registration to date.

## Ireland

Particulars

| | |
|---|---|
| Registration No. | 201211 |
| Reg. Date | 11 June 1998 |
| Class: | 42 |

## Israel

Particulars

No application to date.

**Italy**

Particulars

No application to date.

**Japan**

Particulars

| | |
|---|---|
| Registration No. | 4343740 |
| Reg. Date | 10 December 1999 |
| Renewal Date | 10 December 2009 |
| Class: | 42 |

Notes

Registration is effective for 10 years and may be renewed for a further 10-year period.

**Korea**

Particulars

| | |
|---|---|
| Registration No. | 55736 |
| Reg. date | 23 July 1999 |
| Renewal Date | 23 July 2009 |
| Class | 112 (marketing services) |

**Liechtenstein**

Particulars

| | |
|---|---|
| Registration No. | 9879 |
| Reg. Date | 9 October 1996 |
| Renewal Date | 13 June 2016 |
| Class | 42 |

Notes

Owner:    Dr. Markus Wanger
Advokaturbüro
Landstrasse 36
FL – 9490 Vaduz

EMCA-27406

C3339

## Mexico

### Particulars

| | |
|---|---|
| Registration No. | 553,747 |
| Reg. Date | 7 December 1994 |
| Class | 42 |

## New Zealand

### Particulars

| | |
|---|---|
| Registration No. | 264,099 |
| Reg. Date | 6 October 1997 |
| Class: | 42 |

## Norway

### Particulars

| | |
|---|---|
| Registration No. | 176,602 |
| Reg. Date | 5 September 1996 |
| Renewal Date | 5 September 2006 |
| Class | 42 |

## Panama

### Particulars

| | |
|---|---|
| Registration No. | 81329 |
| Reg. Date | 18 July 1997 |
| Class | 42 |

## Peru

### Particulars

No application/registration to date.

## The Philippines

### Particulars

No application/registration to date.

C3340

Globalaw Limited
0836

**Singapore**

Particulars

Application No.:            3180/95

Notes

Registration Pending

**South Africa**

Particulars

Registration Number      94/13723
Reg. Date                16 August 1994
Renewal Date             8 December 2004
Class                    42

**Spain**

Particulars

Application No.           631306
Class                    42

Notes

It would appear from the documentary evidence that Application 631306 was registered in the name of Dr. Lothar Hoffmann and this application was made prior to the international trade mark application made under the name of Dennis Campbell. Please be informed that at all material times, Dr. Hoffmann acted in a nominee capacity in respect of the ownership of the trade marks.

**Sweden**

Particulars

Registration No.         308163
Reg. date                26 January 1996
Renewal Date             26 January 2006 and every 10th year
Class                    42

EMCA-27406

C3341

Globalaw Limited
0837

## Switzerland

Particulars

Application/registration not accepted.

## United Arab Emirates

Particulars

No application/registration

## United Kingdom

Particulars

| | |
|---|---|
| Registration Certificate No. | 2004333 |
| Reg. Date | 6 December 1994 |
| Class | 42 |

## Venezuela

Particulars

No application/registration

C3342

EMCA-27406

**Globalaw Limited**
**0838**

**B.    Domain Names**

globalaw.ch (Switzerland)
globalaw.cl (Chile)
globalaw.co.at (Austria)
globalaw.co.nz (New Zealand)
globalaw.co.uk (United Kingdom)
globalaw.co.za (South Africa)
globalaw.com.mx (Mexico)
globalaw.com.pa (Panama)
globalaw.li (Liechtenstein)
globalaw.lu (Luxembourg)
globalaw.org.ru (Russia)
globalaw.net
globalaw-group.com
globalcommerce-assist.net

## C.    Organizational Records

1 file per Globalaw member (current and past members)
1 file per Globalaw meeting
25 Globalaw Membership Directory binders
1 trademark file for each registered country
1 Carmon & Carmon file (copy with Jackson Walker and not updated since the matter was assumed by Jackson Walker)
Globalaw News archives 1994–
International Reports archives 1994–

EMCA-27406

C3344

**Globalaw Limited**
**0840**

**D.    Contracts**

There are no existing contracts on behalf of Globalaw.

EMCA-27406

**E.     Prepaid 2002 Dues**

Membership Fees paid in 2001 and Applicable to 2002

| | | |
|---|---|---|
| Abacus | - | $ 1,000.00 (January – August 2002) |
| Attride | - | $   875.00 (January – July 2002) |
| Bahar | - | $   500.00 (January – April 2002) |
| Ballard Spahr | - | $ 4,664.00 (January – August 2002) |
| Day Berry | - | $   583.00 (January 2002) |
| Elite Shay | - | $   875.00 (January – July 2002) |
| Espino Neto | - | $   875.00 (January – July 2002) |
| Fortun Navarra | - | $   625.00 (January – May 2002) |
| Klyer Colarini | - | $   250.00 (January – February 2002) |
| Ruden McCloskey | - | $ 1,749.00 (January – March 2002) |
| Saragoca | - | $   250.00 (January – February 2002) |
| Van Mens | - | $   375.00 (January – March 2002) |
| CLEAVER | - | $ 1,125.00 (January – SEPTEMBER 2002) DC IS 2 2002 |
| **Total** | | ~~$12,621.00~~ $ 15,746.00 |

DC SS 2 2002

EMCA-27406

**F.     Other Assets**

1 box of Globalaw brochures (approximately 750 copies)
1 box of Globalaw memberships pins
4 Globalaw membership plaques

C3347

EMCA-27406

Globalaw Limited
0843

EXHIBIT B

## Exceptions To Representations and Warranties

A.   Liens on Transferred Assets

   None

B.   Contracts Requiring Consent of a Third Party to Assign

   None

C.   Litigation

   There is no pending or prospective litigation involving Globalaw other than that relating to the Globalaw name in the United States.

EMCA-27406

C3348

Globalaw Limited
0844

EXHIBIT C

Unpaid 2001 Dues

|              |   |                                             |
|--------------|---|---------------------------------------------|
| Bergstein    | - | $   125.00 (December 2001)                  |
| Blanco       | - | $   125.00 (December 2001)                  |
| Botello      | - | $   875.00 (June – December 2001)           |
| ~~Cleaver~~  | - | ~~$   375.00 (October – December 2001)~~ DC 25.2.2002 |
| Hilmy        | - | $   750.00 (July – December 2001)           |
| Kyriakides   | - | $1,500.00 (January – December 2001)         |
| Legalis      | - | $   125.00 (December 2001)                  |
| Pinzon       | - | $1,125.00 (April – December 2001)           |
| Zammit       | - | $   250.00 (November – December 2001)       |

Outstanding Payment for Philadelphia Meeting

|          |   |          |
|----------|---|----------|
| Awodein  | - | $   920.00 |

**Total**     ~~$6,170.00~~  $5,795.00  DC 25.2.2002

EMCA-27406

C3349

CARMON & CARMON
V.
DENNIS CAMPBELL

EXHIBIT TO COMPLAINT

# EXHIBIT E

LAW OFFICES

## BALLARD SPAHR ANDREWS & INGERSOLL, LLP

1735 MARKET STREET, 51ST FLOOR
PHILADELPHIA, PENNSYLVANIA 19103-7599
215-665-8500
FAX: 215-864-8999
WWW.BALLARDSPAHR.COM

BALTIMORE, MD
DENVER, CO
SALT LAKE CITY, UT
VOORHEES, NJ
WASHINGTON, DC
WILMINGTON, DE

ROBERTA JACOBS-MEADWAY
DIRECT DIAL: 215-864-8201
PERSONAL FAX: 215-864-9950
JACOBSMEADWAYR@BALLARDSPAHR.COM

January 13, 2006

*via Telecopier*
*and First Class Mail*

Mark Schonfeld, Esquire
Burns & Levinson LLP
125 Summer Street
Boston, MA  02110-1624

      Re:    Globalaw Ltd. and Dennis Campbell
            Our File: 898692

Dear Mark:

        This has reference to your letter of December 29 which I received on January 3.

        You have already requested the file from the TTAB proceeding from Jackson Walker, who is counsel of record in the opposition proceeding. I see no reason to duplicate Jackson Walker's efforts.

        The other documents you have requested are either subject to the work product privilege, or some other privilege, or are documents that Mr. Campbell turned over to others in connection with the asset purchase agreement and so are documents to which he has no claim.

        Sincerely,

        Roberta Jacobs-Meadway

RJM/vlm

cc:    Robert P. Latham, Esquire
      David Lieberworth, Esquire
      Terry Leggett, Esquire

DMEAST #9427504 v1