IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARMON & CARMON, A PARTNERSHIP<br>767 3rd Avenue, 24th Floor<br>New York, New York 10017,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>DENNIS CAMPBELL<br>Schweigmuhlweg 6A<br>5020 Salzburg, Austria<br>Serve: Mark Schonfeld, Esq.<br>Burns & Levinson LLP<br>125 Summer Street<br>Boston, MA 02110,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:06-cv-00769-CKK<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**GLOBALAW LIMITED'S MOTION TO INTERVENE IN AND TO STAY PROCEEDINGS**

Pursuant to Fed. R. Civ. P. 24(a), Globalaw Limited moves this Court for an order allowing it to intervene in *Carmon & Carmon v. Dennis Campbell*, Case No. 06CV769 (CKK), and staying this case until the termination of the case styled *Globalaw Limited v. Carmon & Carmon Law Office and Globalaw, Inc.*, Case No. 03CV00950 (CKK), in which there is pending a motion for summary judgment filed by Globalaw Limited and other parties; that motion has been fully briefed and a ruling may affect claims asserted in this action.

                                      Respectfully submitted,

*[signature]*

Constantinos G. Panagopoulos #430932
Charles W. Chotvacs #484155
Ballard Spahr Andrews & Ingersoll, LLP
601 13th Street, N.W.
Suite 1000 South
Washington, DC 20005
Telephone: (202) 661-2200
Facsimile: (202) 661-2299

June 7, 2006

***Counsel for Globalaw Limited***

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of June, 2006, the foregoing document was mailed, first-class postage prepaid, to the following counsel of record:

John C. Lowe
John Lowe, P.C.
5920 Searl Terrace
Bethesda, MD 20816
john.lowe@finnegan.com

Laurence R. Hefter
901 New York Avenue, N.W.
11th Floor
Washington, D.C. 20001-4413
laurence.hefter@finnegan.com

_____
Charles W. Chotvacs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARMON & CARMON, A PARTNERSHIP ) <br> 767 3rd Avenue, 24th Floor ) <br> New York, New York 10017, ) <br>   ) <br> Plaintiff, ) <br>   ) <br> v. ) <br>   ) <br> DENNIS CAMPBELL ) <br> Schweigmuhlweg 6A ) <br> 5020 Salzburg, Austria ) <br> Serve: Mark Schonfeld, Esq. ) <br> Burns & Levinson LLP ) <br> 125 Summer Street ) <br> Boston, MA 02110, ) <br>   ) <br> Defendant. ) | Civil Action No. 1:06-cv-00769-CKK |

## GLOBALAW LIMITED'S MEMORANDUM IN SUPPORT OF ITS MOTION TO INTERVENE IN AND TO STAY PROCEEDINGS

Globalaw Limited's Motion to Intervene should be granted because Globalaw Limited has an interest in the subject matter of this litigation, its interest may be impaired or impeded absent intervention, and the existing parties to this litigation inadequately represent Globalaw Limited's interest. Further, Globalaw Limited's Motion to Stay Proceedings should be granted because the claims asserted in this case have been litigated since 2003 in another proceeding before this Court, Case No. 03CV00950 (CKK) (the "Original Proceeding"), and are already the subject of a pending summary judgment motion in that case.

This lawsuit is Plaintiff's attempt to make an end-run of the Original Proceeding by asserting claims against an individual residing in Austria who, four years ago, transferred to Globalaw Limited all of his rights and interests in the Globalaw Network. Thus, Plaintiff here has raised the same claims against Mr. Campbell, the transferor, that—after one and a half years of discovery and several motions to compel in the Original Proceeding—are ripe for

1

consideration in the form of a pending motion for summary judgment filed by Globalaw and other parties who are counterclaim defendants in the Original Proceeding. Elsewhere, Plaintiff has argued that this is a suit for breach of contract regarding an agreement only between it and Campbell. However, if that is the case, then this action is nothing more than a backdoor, belated attempt at discovery of materials related to the Original Proceeding, that Plaintiff knows were transferred by Mr. Campbell to Globalaw Limited through a 2002 asset transfer agreement. Plaintiff's plain efforts to circumvent the Original Proceeding should not be countenanced. For these reasons, and those set forth below, Globalaw Limited respectfully requests that it be allowed to intervene, and that the Court grant its request for a stay of this litigation, pending the termination of the Original Proceeding.

## I.

## BACKGROUND

On April 29, 2003, Globalaw Limited (or "Intervenor") brought the Original Proceeding, a declaratory judgment action against Carmon & Carmon Law Office and Globalaw, Inc. ("C&C"), seeking a declaration of the parties' rights in the term "Globalaw," Case No. 03CV00950 (CKK). On January 13, 2004, C&C filed a counterclaim in the Original Proceeding against Globalaw Limited, as well as various U.S. member firms of Globalaw Limited, including Ballard Spahr Andrews & Ingersoll, LLP, Jackson Walker L.L.P., and Garvey Schubert Barer (collectively "Counterclaim Defendants"). *See* C&C Counterclaim (attached hereto as Exhibit A). In its counterclaim, C&C argued that C&C was the first entity to begin using the term "Globalaw" in the United States, and that Dennis Campbell, the founder of the Globalaw Network (and predecessor of Globalaw Limited), willfully infringed C&C's mark and utilized it in promoting his network of law firms. C&C argued that because Mr. Campbell had no rights in

the mark, he could not pass on any rights when he assigned all his rights and interests in the Globalaw Network and mark to Globalaw Limited in 2002. On the other hand, C&C argued that it had established common law rights in the mark "Globalaw," and that the use of the term by Globalaw Limited and its U.S. member firms had damaged those rights and the goodwill associated therewith.

Over the next year and a-half, the parties undertook protracted, in-depth discovery in the Original Proceeding, including the taking of over a dozen depositions all over the country. The discovery led to two motions to compel, two motions for protective orders, and briefing on the issue of damages. Discovery finally concluded in that case on September 14, 2005.

On October 25, 2005, Counterclaim Defendants filed their motion for summary judgment in the Original Proceeding. The motion moves for judgment on all claims raised in C&C's Counterclaim. Invariably, the motion asserts that the term "Globalaw" is generic and, thus, incapable of trademark status. Moreover, even if the term is not generic, it is at most descriptive and not subject to trademark protection because C&C cannot establish that "Globalaw" has achieved secondary meaning. As such, a decision on the motion in the Original Proceeding will involve a determination of C&C's rights, or lack thereof, in the term "Globalaw." And, if C&C cannot claim any rights in the term "Globalaw," then all claims against Counterclaim Defendants in the Original Proceeding must be dismissed. At this time, the motion in the Original Proceeding has been fully briefed by the parties and is awaiting decision — no further action is required.

On April 27, 2006, C&C filed its four-count Complaint in this case against Dennis Campbell, the creator of the Globalaw Network and predecessor-in-interest to Globalaw Limited. C&C asserts that Mr. Campbell "and those acting in concert with him" have falsely advertised

3

and promoted themselves as the owners of the service mark "Globalaw." (Complaint, p. 9 ¶ 35, p. 10 ¶ 39, p. 11 ¶ 45). C&C, which admits in the Complaint that the Original Proceeding regards rights to the term "Globalaw," (Complaint, p. 2 ¶ 1), alleges that it was the senior user of the term "Globalaw" in the United States, (Complaint, p. 6 ¶ 18), that Mr. Campbell willfully infringed its mark, (Complaint, p. 4 ¶ 9), and that Mr. Campbell never transferred his rights in the mark in the United States to Globalaw Limited, (Complaint, p. 5 ¶ 15). C&C also asserts that Mr. Campbell breached a settlement agreement he entered into with C&C stemming from a similar suit in the District of Massachusetts because Mr. Campbell failed to turn over certain documents, (Complaint, p. 6 ¶¶ 17, 19, p. 8 ¶¶ 28-33), even though such documents belong to Globalaw Limited pursuant to an Asset Transfer and Consulting Agreement (the "Agreement") entered into by Mr. Campbell and Intervenor in February of 2002. Carmon & Carmon alleges four claims for relief in this lawsuit: (1) breach of contract, (2) trademark infringement pursuant to section 43(a) of the Lanham Act, (3) false advertising pursuant to section 43(a) of the Lanham Act, and (4) common law trademark infringement. (Complaint, pp. 8-11). As of today's date, Mr. Campbell, who resides in Austria, has not answered in this case.

## II.

## ARGUMENT AND AUTHORITIES

Federal Rule of Civil Procedure 24(a) provides that, upon proper showing, a party shall be permitted to intervene in an action as a matter of right. Qualification for intervention as of right is determined by analyzing the following factors: (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4)

whether the present parties in the suit adequately represent the applicant's interest. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citing *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998)). Further, a party seeking intervention as of right must demonstrate that it has standing under Article III of the Constitution. *Fund for Animals, Inc.*, 322 F.3d at 731-32.

**Intervenor's Motion is Timely**

The timeliness of a motion to intervene is to be judged in consideration of all the circumstances, especially weighing the time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case. *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (citing *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)). C&C filed this lawsuit against Mr. Campbell on April 27, 2006. Intervenor now timely files its motion to intervene less than 45 days from the commencement of this suit and prior to an answer from Mr. Campbell. *See Fund for Animals, Inc.*, 322 F.3d at 735 (finding party had timely moved for intervention less than two months after plaintiff filed its complaint and prior to defendant filing its answer). As explained below, intervention is necessary to protect Intervenor's rights in the subject matter of this litigation. Finally, the granting of Intervenor's motion will work no prejudice to the parties in this case as the case has been pending a short time, no discovery has been taken, and there are no motions by either party currently before the Court.

**Intervenor has an Interest in the Subject Matter of this Litigation.**

An intervenor's interest is obvious when it asserts a claim to property that is the subject matter of the suit. *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) (citing *Atlantis*

5

*Development v. United States*, 379 F.2d 818 (5th Cir. 1967)). "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967). The relevant subject matter in this suit is the rights to the term "Globalaw" and various documents and organizational records created during the existence of the Globalaw network. In its Complaint in this action, Plaintiff recognizes that Globalaw Limited claims to be the successor to Mr. Campbell and that its members in the U.S. are under license from Globalaw Limited as the successor. Pursuant to the Agreement entered into by Mr. Campbell and Intervenor, Intervenor is the successor in interest to all of Mr. Campbell's rights to the term "Globalaw" and other assets of the Globalaw network. The purpose of the Agreement was for Intervenor to take over the Globalaw network, and all of the assets and rights appurtenant thereto. Paragraph D of the Agreement clearly states: "The Globalaw association has formed Assignee to *continue the business and affairs of the association*." (Exhibit B, at ¶ D (Globalaw Limited 0820) (emphasis added)). The specific language related to the transfer of the marks demonstrates that this included any and all rights to the term "Globalaw" acquired in the U.S.:

> Upon the terms and subject to the conditions of this Agreement, on the Effective Date, Assignor [Campbell] hereby assigns, transfers, conveys and delivers to Assignee [Globalaw Limited], and Assignee accepts from Assignor, all right, title, and interest in and to the Marks, together with all renewals thereof, income royalties, damages and payments now or hereafter due and/or payable with respect thereto, including without limitation damages and payments for past or future infringements thereof, and the goodwill associated with and symbolized by the Marks.

(*Id.* at ¶ 1.1 (Globalaw Limited 0821)). The Agreement also makes clear that the "Marks" in question include all rights associated with the name "Globalaw" worldwide, whether registered or not, and that Mr. Campbell owned those rights.

> Assignor [Campbell] is the owner of all right, title and interest *throughout the*

> *world, whether registered or unregistered,* in the service mark GLOBALAW and related service marks set forth in Schedule A, attached hereto and incorporated herein (the "Marks"), and the goodwill associated with and symbolized by the Marks.

(*Id.* at Background ¶ A (Globalaw Limited 0820) (emphasis added)).

Further, numerous other provisions in the Agreement confirm that *all* the assets used in administering the Globalaw network were transferred to Intervenor. For example, in paragraph 1.6, "Other Assets," the Agreement purports to transfer "any other assets used in the management and operations of Globalaw." (*Id.* at ¶ 1.6 (Globalaw Limited 0821)). Importantly, included in the "Other Assets" transferred by Mr. Campbell are the "Organizational Records" of the Globalaw Network, which encompass the privileged documents which C&C seeks from Mr. Campbell in this case. (*Id.* at ¶ 1.3, 1.6 (Globalaw Limited 0821)). Pursuant to the Agreement, Intervenor has acquired all rights that Mr. Campbell had in the subject matter of this lawsuit – namely the rights to the term "Globalaw" and any and all documents and other assets pertaining to the Globalaw network. As such, Intervenor has a strong interest in the subject matter of this lawsuit and intervention should be granted.

**Intervenor's Ability to Protect its Interest Will be Impaired Without Intervention**

In weighing this factor, a court should look to the practical consequences of denying intervention, even where the possibility of future challenge to the consequences remains available. *Fund for Animals, Inc.*, 322 F.3d at 735 (quoting *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)). The relief requested by C&C, and which could be afforded in the event of a judgment against Mr. Campbell, could impair the ability of Intervenor to protect its interest in the assets conferred to it in the Agreement. Specifically, C&C seeks a permanent injunction enjoining Mr. Campbell "and all persons acting in concert with him" from using the service mark "Globalaw," (Complaint, p. 12 ¶ 46(b)(1)); as well as an order by this Court

7

"declaring that the Defendant had never acquired any rights in the mark Globalaw in the U.S., in common law or otherwise, that he never had any right to benefit from its use or license, sell, or transfer any such purported rights in the U.S. to anyone, and that any such license, sale or transfer, if ever made, is null and void ab initio," (Complaint, p. 13 ¶ 46(g)). Further, C&C is seeking a court order requiring Mr. Campbell, his former and present lawyers, and others "acting in concert" with him, to produce privileged documents the rights to which Intervenor acquired in the Agreement. (Complaint, p. 13 ¶ 46(a)). The claims and relief C&C seeks in the instant case are not just against Mr. Campbell, but, instead, affect the rights and interests of Intervenor. Should intervention be denied, Intervenor's ability to protect its interests in these assets could be impaired and as such intervention should be granted.

**The Present Parties in the Suit Will Not Adequately Represent Intervenor's Interests**

The requirement that the present parties will not adequately represent Intervenor's interests is satisfied upon a showing that representation of its interest "may be" inadequate; and the burden of making that showing should be treated as "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Upon information, Intervenor believes that Mr. Campbell, an Austrian resident for the past 10 years, will not seek to defend the instant case. As noted above, Mr. Campbell has yet to file an answer in this proceeding. Mr. Campbell's failure to answer this suit could impact Intervenor's interests without giving Intervenor the benefit of a defense. In the event Mr. Campbell was to answer and defend this suit, his interests are not aligned with those of Intervenor as he has transferred his interest in the subject matter of this case. The only party that may adequately represent Intervenor's interests in this case is Intervenor itself.

8

**Intervenor Has Standing Under Article III of the Constitution**

To establish standing under Article III, a prospective intervenor must show: (1) injury-in-fact, (2) causation, and (3) redressability. *Fund for Animals, Inc.*, 322 F.3d at 732-33. With respect to intervention as of right in the district court, the matter of standing may be purely academic, as any party who satisfies Rule 24(a) will also meet Article III's standing requirement. *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (citing *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000)). In the instant case, Intervenor could suffer an injury in fact—the loss of its interests in the assets acquired through the Agreement. This injury is capable of legal redress, and as such, Intervenor has standing to intervene in this suit. *See Roeder*, 333 F.3d 228, 233-34 (finding United States government had standing to intervene in suit in which its interest in upholding the Algiers Accords would be impaired if plaintiffs obtained a judgment in violation of the Accords).

**The Court Should Stay the Instant Proceeding Pending the Termination of the Original Proceeding**

The Court should stay the instant proceeding because the issues presented are ripe for decision in the Original Proceeding and a decision in the instant case could work a detriment on Intervenor. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket, with economy of time and effort for itself, for counsel, and for litigants." *Landis v. Am. Water Works & Electric Co.*, 299 U.S. 248, 254 (1939); *accord Hikers Indus. v. William Stuart Indus. (Far East) Ltd.*, 640 F. Supp. 175, 177 (S.D.N.Y. 1986) (quoting *Landis*, 299 U.S. at 254, and finding stay of entire trademark action pending arbitration between only two of the parties was appropriate because the rights being decided in the arbitration would address the claims against the non-arbitrating defendant); *see also Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) (stating "[a] trial

9

court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case"); *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) (finding that "[a] United States district court has broad power to stay proceedings"). In determining whether to grant or deny a stay, courts consider such factors as (1) judicial resources and economy, *see Nat'l Shopmen Pension Fund v. Folger Adam Sec., Inc.*, 274 B.R. 1, 3 (D.D.C. 2002) (stating that "[l]itigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests regarding time, cost, and effort"); *U.S. Bank, Nat'l Ass'n v. Royal Indem. Co.*, No. Civ.A. 3:02-CV-0853-P, 2002 WL 31114069, at *1 (N.D. Tex. Sept. 23, 2002); *Hikers*, 640 F. Supp. at 178; (2) the avoidance of confusion and possible inconsistent results, *see Hikers*, 640 F. Supp. at 178; (3) the hardship to the moving party if the action is not stayed, *see Landis*, 299 U.S. at 255; *U.S. Bank*, 2002 WL 31114069, at *1; and (4) the potential prejudice to the non-moving party, *U.S. Bank*, 2002 WL 31114069, at *1; *Remington Arms Co. v. Modern Muzzleloading, Inc.*, No. 2:97CV00660, 1998 WL 1037920, at *1 (M.D.N.C. Dec. 17, 1998). Based on a weighing of the facts at issue here, a stay of this case is appropriate.

First, staying the instant case serves the interests of judicial economy. The overwhelming thrust of C&C's new complaint deals with C&C's claims to senior rights in the term "Globalaw" and the alleged infringement of those rights by Mr. Campbell and "those acting in concert with him." However, in order for C&C's claims of infringement, unfair competition, and false advertising to have any merit, C&C must have certain rights in the term "Globalaw." Whether or not C&C has rights in the term "Globalaw" is the question that has been directly presented to this Court in Counterclaim Defendants' motion for summary judgment in the Original Proceeding.

The parties in the Original Proceeding have filed thorough briefs in support, opposition, and reply to the motion for summary judgment, and all that awaits is a decision by this Court. As such, the Original Proceeding can be decided with a ruling on the motion for summary judgment. Accordingly, judicial resources are best served by staying the instant case until the Original Proceeding is terminated.

Second, staying the instant case will serve to avoid confusion and possible inconsistent results. Here, C&C asserts that Mr. Campbell and "those acting in concert with him" have infringed on its rights. As such, the rights of C&C are at issue in both cases, as are the actions of Mr. Campbell, Intervenor, and the other Counterclaim Defendants, and a decision in the instant case as to these parties could lead to inconsistencies and confusion of rights. A failure to stay the this case will only raise additional issues in the Original Proceeding.

Third, and most importantly, Intervenor could be unduly prejudiced if this case is not stayed. In the instant case, C&C relates the rights and actions of Mr. Campbell with Globalaw Limited and the other Counterclaim Defendants in the Original Proceeding. For example, C&C alleges that "Defendant and those in concert with him" began using the term "Globalaw" beginning in early 1994, (Complaint, p. 7 ¶ 22), and that "Defendant and those in concert with him" had actual knowledge of Carmon & Carmon's alleged ownership of the mark as early as January 1996, (Complaint, p. 7 ¶ 23). C&C goes on to assert that "Defendant and those acting in concert with him" advertised that they were owners of the service mark 'Globalaw' and used the mark to advertise and promote their legal services, which use is likely to cause confusion and constitute trademark infringement and false advertising pursuant to section 43(a) of the Lanham Act, as well as common law trademark infringement." (Complaint, p. 9 ¶ 35, p. 10. ¶¶ 37, 39, 41, p. 11 ¶ 45).

Essentially, through this lawsuit, C&C is seeking a determination of its rights, and those of Intervenor and the other parties in the Original Proceeding, through backdoor channels. The claims and relief it seeks here are not just against Mr. Campbell, but, instead, implicate the rights that are before the Court in the Original Proceeding and that are awaiting decision in Counterclaim Defendants' motion for summary judgment pending in that case. Accordingly, Intervenor may be severely prejudiced if a stay is not granted in this case.

Fourth, C&C will not be prejudiced by staying the instant case. C&C just filed its Complaint against Mr. Campbell on April 27, 2006. The case is in its infancy and Mr. Campbell has not even answered. The only reason C&C advances for its filing of this action now is to obtain documents to which it thinks it is entitled. However, all assets related to Mr. Campbell's Globalaw network were assigned to Globalaw Limited via the Agreement Mr. Campbell executed on February 28, 2002. Neither Mr. Campbell, nor C&C as part of its settlement agreement therewith, have any right to the documents they seek. Accordingly, C&C will not be prejudiced by a stay of this pending the termination of the Original Proceeding.

### III.

### CONCLUSION

For the foregoing reasons, Globalaw Limited respectfully requests that this Court grant its motion to intervene in and to stay the proceedings in this case, until the Original Proceeding has terminated.

Submitted June 7, 2006.

Respectfully submitted,

/s/

Constantinos G. Panagopoulos #430932
Charles W. Chotvacs #484155
Ballard Spahr Andrews & Ingersoll, LLP
601 13th Street, N.W.
Suite 1000 South
Washington, DC 20005
Telephone: (202) 661-2200
Facsimile: (202) 661-2299

***Counsel for Globalaw Limited***

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of June, 2006, the foregoing document was mailed, first-class postage prepaid, to the following counsel of record:

John C. Lowe
John Lowe, P.C.
5920 Searl Terrace
Bethesda, MD  20816
john.lowe@finnegan.com

Laurence R. Hefter
901 New York Avenue, N.W.
11th Floor
Washington, D.C.  20001-4413
laurence.hefter@finnegan.com

Charles W. Chotvacs

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CARMON & CARMON, A PARTNERSHIP<br>767 3rd Avenue, 24th Floor<br>New York, New York 10017,<br><br>      Plaintiff,<br><br>v.<br><br>DENNIS CAMPBELL<br>Schweigmuhlweg 6A<br>5020 Salzburg, Austria<br>Serve: Mark Schonfeld, Esq.<br>Burns & Levinson LLP<br>125 Summer Street<br>Boston, MA 02110,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:06-cv-00769-CKK |

**ORDER GRANTING GLOBALAW LIMITED'S MOTION TO
INTERVENE IN AND TO STAY PROCEEDINGS**

THIS MATTER came before the Court on motion by Globalaw Limited to intervene in and to stay proceedings in this action. Having considered Globalaw Limited's Motion to Intervene and to Stay Proceedings, the Court is of the opinion that the Motion is well taken and should in all things be granted.

IT IS, THEREFORE, ORDERED that Globalaw Limited may intervene in this action.

IT IS FURTHER ORDERED that this action is hereby stayed until the termination of the case styled *Globalaw Limited v. Carmon & Carmon Law Office and Globalaw, Inc.*, Case No. 03CV00950 (CKK).

DATED this ____ day of _____, 2006.

_____
United States District Judge

<u>A copy of the foregoing order shall be mailed to:</u>

John Lowe
John Lowe, P.C.
5920 Searl Terrace
Bethesda, MD 20816

Laurence R. Hefter
901 New York Avenue, N.W.
11th Floor
Washington, D.C. 20001-4413

Constantinos G. Panagopoulos
Charles W. Chotvacs
Ballard Spahr Andrews & Ingersoll, LLP
601 13th Street, N.W.
Suite 1000 South
Washington, DC 20005-3807

**ORDER GRANTING GLOBALAW LIMITED'S MOTION TO INTERVENE IN AND TO STAY PROCEEDINGS**