*Carmon & Carmon, A Partnership*
*v.*
*Dennis Campbell*
**Case No. 1:06CV769 (CKK)**

# <u>EXHIBIT B</u>

Asset Transfer and Consulting Agreement, dated Feb. 28, 2002

## EXHIBIT B

## ASSET TRANSFER AND CONSULTING AGREEMENT

**Date 28 February 2002**

This Asset Transfer and Consulting Agreement (this "Agreement"), dated today but to take effect from January 1, 2002 (the "Effective Date"), is made by and between Dennis Campbell, c/o Yorkhill Limited Inc., PO Box 19, A-5033 Salzburg, Austria ("Assignor"), and Globalaw Limited, a Jersey corporation ("Assignee"). Assignor and Assignee are referred to individually herein as a "Party" and collectively herein as the "Parties."

### Background

A.      Assignor is the owner of all right, title and interest throughout the world, whether registered or unregistered, in the service mark GLOBALAW and related service marks set forth on Schedule A, attached hereto and incorporated herein (the "Marks"), and the goodwill associated with and symbolized by the Marks;

B.      Assignor is the founder and has managed the secretariat of Globalaw, a previously unincorporated association of law firms, and has used the Marks in connection with the business and affairs of the association;

C.      Assignor has established a web site on the Internet located at www.globalaw.net (the "Web Site") for the Globalaw association and registered the Internet domain names set forth on Schedule A (the "Domain Names") for use in connection with the Web Site.

D.      The Globalaw association has formed Assignee to continue the business and affairs of the association;

E.      Assignee is desirous of acquiring all right, title, and interest in and to the Marks the Web Site, the Domain Names and certain other assets more fully described in Section 1 together with the goodwill of the Globalaw association symbolized by the Marks (collectively, the "Transferred Assets");

F.      Assignor has agreed to the Transferred Assets;

G.      In connection with the acquisition by Assignee of the Transferred Assets, Assignee desires to assure itself that, as of the closing of the transactions contemplated by the Agreement, the experience and skill of the Assignor will remain available to Assignee; and

H.      The Assignor is willing to provide services to Assignee during the Term (as defined herein) upon the terms and conditions set forth herein;

Globalaw Limited
0820

## Agreements

In consideration of the mutual covenants and agreements contained herein, the Parties hereto, intending to be legally bound, hereby agree as follows:

1. **Assets To Be Transferred.**

1.1    <u>Marks</u>.  Upon the terms and subject to the conditions of this Agreement, on the Effective Date, Assignor hereby assigns, transfers, conveys and delivers to Assignee, and Assignee accepts from Assignor all right, title, and interest in and to the Marks, together with all renewals thereof, income, royalties, damages and payments now or hereafter due and/or payable with respect thereto, including without limitation damages and payment for past or future infringements thereof, and the goodwill associated with and symbolized by the Marks.

1.2    <u>Web Site</u>.  Upon the terms and subject to the conditions of this Agreement, on the Effective Date, Assignor hereby assigns, transfers, conveys and delivers to Assignee, and Assignee hereby accepts from Assignor the Web Site and all of the assets, whether tangible and intangible, of the Assignor used in, or necessary to, the operation or support of the Web Site (the "Web Site Assets"), consisting of (i) the Domain Names "globalaw.net" and their associated registration with Network Solutions, Inc. or any other domain name registry and all web sites and web pages related thereto, (ii) all media, devices and documentation related to the Web Site and its component parts, and (iv) all proprietary information, software, systems or models, databases, technology rights and licenses, proprietary rights, know-how, techniques, procedures, policies and processes currently being used in, or necessary to, the operation or support of the Web Site.

1.3    <u>Organization Records</u>.  Upon the terms and subject to the conditions of this Agreement, on the Effective Date, Assignor hereby assigns, transfers, conveys and delivers to Assignee, and Assignee hereby accepts from Assignor all the organization records, including the membership records, identified in Exhibit A (the "Organization Records").

1.4    <u>Membership Dues</u>.  Upon the terms and subject to the conditions of this Agreement, on the Effective Date, Assignor hereby assigns, transfers, conveys and delivers to Assignee, and Assignee hereby accepts from Assignor the right to all Globalaw membership dues for the year 2002 and beyond.

1.5    <u>Contracts</u>.  Upon the terms and subject to the conditions of this Agreement, and effective December 31, 2001, Assignor will assign, transfer, convey and deliver to Assignee, and Assignee will accept from Assignor all of the contracts identified in Exhibit A (the "Contracts").

1.6    <u>Other Assets</u>.  Upon the terms and subject to the conditions of this Agreement, Assignor hereby assigns, transfers, conveys and delivers to Assignee, and Assignee hereby accepts from Assignor any other assets used in the management and operations of Globalaw and identified in Exhibit A of this Agreement (the "Other Assets").  The Assignee will accept the Other Assets in "as is" condition.

EMCA-27406

Globalaw Limited
0821

## 2.    Liabilities.

2.1    Assumed Liabilities.  With effect from December 31, 2001, Assignee will assume and become responsible for the liabilities that arise on or after December 31, 2001 under the Contracts (defined below) assigned as part of the Transferred Assets (the "Assumed Liabilities").

2.2    Excluded Liabilities.  Assignee will not assume or have any responsibility with respect to any obligation, liability or debt of Assignor or its assets, whether known or unknown, liquidated or unliquidated, fixed or contingent, arising by operation of law or otherwise, other than the Assumed Liabilities, and this Agreement shall not be construed as an undertaking on the part of Assignee to pay or discharge any obligation, liability or debt of Assignor other than the Assumed Liabilities.

2.3    Employment Obligations.

(a)    It is agreed that Assignee shall not assume any of the liabilities of Assignor under employment agreements.  Assignor therefore undertakes either to terminate all employment agreements related to the secretariat or to offer such employees alternative positions in his organizations outside the secretariat prior to the Effective Date.

(b)    Assignor further undertakes, should employees of Assignor claim that as of the Effective Date they are employed with Assignee, to indemnify and hold Assignees harmless upon first request against and in respect of any claim or assertion of liability which is made or asserted by any employee of Assignor against Assignee based on a transfer of employment to the Assignee.  Such indemnification shall include all expenses of Assignee incurred with such employees including, without being limited to, wages, salaries, reasonable counsel fees, redundancy payments and all costs incurred with the termination of such employees' employment.

## 3.    Consideration

3.1    Payments.  As consideration for the Transferred Assets, Assignee agrees to pay Assignor the sum of $30,000 to be paid in three (3) annual installments of $10,000 in March 2002, March 2003 and March 2004.

3.2    Pledge of Transferred Assets.  As security for the payment of amounts due under Section 3.1, Assignee hereby grants as continuing security for the payment or discharge when due of the Payments by way of first legal charge over the Transferred Assets and/or the proceeds of any sale or other disposition of the Transferred Assets.

## 4.    Secretariat

4.1    Secretariat.  It is agreed  that the Assignor has continued to manage the secretariat of the Assignee until December 31, 2001 for no additional consideration.

4.2    Transition.  During the Transition Period, the Assignor confirms that he has not entered into any transaction outside of the ordinary course of business of

EMCA-27406

**Globalaw Limited**
**0822**

Globalaw on behalf of Globalaw. It is noted that the Assignor has used the Transferred Assets necessary for the normal management and operations of Globalaw up to December 31 2001. The Assignor confirms that he has not entered into any contract or arrangement purporting to bind the Assignor.

4.3    <u>Membership Dues</u>. The Assignor has as and, if requested by Assignee, continued to collect all Globalaw membership dues until December 31, 2001. On or within 5 days of the date of this Agreement, Assignor will transfer all Globalaw membership dues that have been paid to it for the year 2002 (the "Prepaid 2002 Dues"), identified on Exhibit A, to Assignee. Upon Assignee's request, Assignor will transfer any Globalaw membership dues that have been paid for the year 2002 to the Assignee prior to December 31, 2001. Assignor may retain all Globalaw membership dues paid for the year 2001.

4.4    <u>Unpaid Membership Dues</u>. Assignor will notify Assignee if any Globalaw membership dues for the year 2001 are due and owing as of December 31, 2001 (the "Unpaid 2001 Dues"), identified on Exhibit C. If Assignor notifies Assignee of Unpaid 2001 Dues, Assignee will continue to attempt to collect the Unpaid 2001 Dues. Assignee will transfer any Unpaid 2001 Dues it collects to Assignor. Assignee will give collection of Unpaid 2001 Dues from members who have Unpaid 2001 Dues priority over the collection of Globalaw membership dues for the year 2002 from such members.

5.    <u>**Consulting Arrangement**</u>

5.1    <u>Services.</u> The Assignor agrees to perform such consulting, advisory and related services to and for the Assignee as may be reasonably requested from time to time by Assignee, including, but not limited to, assistance in identifying and cultivating members and advice regarding past practices and commercial relationships of Globalaw, during the Term.

5.2    <u>Term.</u> The consulting arrangement shall be for the period commencing on January 1, 2002 and ending on December 31, 2006 (the "Term"). The Term commenced on January 1, 2002 without any further action on the part of either Assignee or the Assignor.

5.3    <u>Consulting Fees</u>. Assignee shall pay to the Assignor consulting fees of $15,000 per year during the Term. Assignor's consulting fees for any calendar year after December 31, 2001 will be reduced by any amount that he or any affiliated organization is paid with respect to such calendar year to manage the secretariat of the Assignee.

5.4    <u>Reimbursement of Expenses</u>. Assignee shall reimburse Assignor for all reasonable and necessary travel expenses incurred or paid by the Assignor in connection with, or related to, the performance of his services under this Agreement provided, however, that all such travel expenses are approved in advance by Assignee. The Assignor shall submit to Assignee itemized monthly statements, in a form satisfactory to Assignee, of such travel expenses incurred in the previous month. Assignee shall pay to the Assignor all such reimbursement amounts shown on each such statement within 30 days after receipt thereof.

Assignor must pay for all other expenses incurred or paid by the Assignor in connection with, or related to, the performance of his services under this Agreement.

    5.5   <u>Benefits</u>. The Assignor shall not be entitled to any of the benefits, coverages or privileges, including, without limitation, social security, unemployment, medical or pension payments, made available to employees of Assignee.

    5.6   <u>Termination</u>.

    (a)   If the Assignor dies or becomes disabled during the Term, this Agreement shall terminate automatically.

    (b)   If either Party is in material breach of its obligations under this Agreement and such breach is not cured within 15 days of notice of such breach by the non-defaulting Party, then the non-defaulting Party may, in addition to any other rights it may have at law or in equity, terminate this Agreement by giving notice of such termination the defaulting Party.

    (c)   Upon a termination of this Agreement, the Assignor shall be entitled to payment for services performed and travel expenses incurred prior to the date of termination.

    (d)   The representations, warranties and indemnities contained in the Agreement and the Assignee's obligations under Sections 3.1 and 3.2 shall survive any termination of this Agreement.

    5.7   <u>Cooperation</u>. The Assignor shall use his best efforts in the performance of his obligations under this Agreement. Assignee shall provide such access to its information and property as may be reasonably required in order to permit the Assignor to perform his obligations hereunder. The Assignor shall cooperate with Assignee's personnel, shall not interfere with the conduct of Assignee's business and shall observe all rules, regulations and security requirements of Assignee.

    5.8   <u>Confidentiality and Non-Compete</u>.

    (a)   <u>Confidential Information</u>. The Assignor acknowledges that by reason of his consulting relationship with Assignee, and his prior employment relationship with Globalaw, he has and will hereafter, from time to time during the Term, become exposed to and/or become knowledgeable about proposals, plans, practices, systems, programs, processes, methods, techniques, research, records, supplier sources, customer lists, and other forms of business information which are not known to Assignee's competitors and which are not recognized as being encompassed within standard business or management practices and which are kept secret and confidential by Assignee (the "Confidential Information"). The Assignor therefore agrees that at no time during or after the Term will he disclose or use the Confidential Information, or any information related to the assets transferred to Assignee from Globalaw under the Agreement, except to the extent such information becomes public through no fault of the Assignor, as required by law, as authorized by the Assignee, or as may be required in the prudent course of business for the benefit of Assignee.

EMCA-27406

(b)    Non-Compete.  In consideration of the mutual terms and agreements set forth in this Agreement, Assignor hereby agrees that, while Assignor is providing consulting services to Assignee, neither he nor any organization or entity with which he is affiliated will create, establish, support, or assist another international network of commercial law firms.  During the term of this Agreement, neither Assignor nor any organization or entity with which he is affiliated will (1) recruit any member of Globalaw to join another international network of commercial law firms, (2) solicit, induce, or attempt to solicit or induce any member of Globalaw to terminate its membership in Globalaw, or (3) solicit, divert, or take away, or attempt to solicit, divert, or take away, any prospective members of Globalaw.  During the term of this Agreement, Assignor will continue to give priority to Globalaw members when he is asked by third parties to recommend firms for business referrals.  It is understood and accepted that this provision neither restricts Assignor in the execution of his responsibilities as Director of the Center for International Legal Studies nor restrains Assignor in the continued offering of his services as a legal and business consultant to individual law firms, law schools, educational associations, corporations, and government entities.

(c)    Remedies.  Assignee and the Assignor confirm that the restrictions contained in Sections 5.8(a) and 5.8(b) hereof are, in view of the nature of the business of Assignee, reasonable and necessary to protect the legitimate interests of Assignee and that any violation of any provision of Section 5.8(a) or 5.8(b) will result in irreparable injury to Assignee.  The Assignor hereby agrees that, in the event of any breach or threatened breach of the terms or conditions of this Agreement by the Assignor, Assignee's remedies at law will be inadequate and, in any such event, Assignee shall be entitled to commence an action for preliminary and permanent injunctive relief and other equitable relief in any court of competent jurisdiction.  The Assignor further irrevocably consents to the jurisdiction of any court located in England over any suit, action or proceeding arising out of or relating to this Section 5.8(c) and hereby waives, to the fullest extent permitted by law, any objection that he may now or hereafter have to such jurisdiction or to the laying of venue of any such suit, action or proceeding brought in such a court and any claim that such suit, action or proceeding has been brought in an inconvenient forum.

(d)    Modification of Terms.  If any restriction in this Section 5.8 is adjudicated to exceed the time, geographic, service or other limitations permitted by applicable law in any jurisdiction, the Assignor agrees that such may be modified and narrowed, either by a court or Assignee, to the maximum time, geographic, service or other limitations permitted by applicable law so as to preserve and protect Assignee's legitimate business interest, without negating or impairing any other restrictions or undertaking set forth in the Agreement.

5.9    Independent Contractor Status.  The Assignor shall perform all services under this Agreement as an "independent contractor" and not as an employee or agent of Assignee.  The Assignor is not authorized to assume or create any obligation or responsibility, express or implied, on behalf of, or in the name of, Assignee or to bind Assignee in any manner.  Assignor is responsible for all tax due on any payments he receives pursuant to this Agreement.

6.    Representations and Warranties of Assignor.  Assignor unconditionally represents and warrants to Assignee that as of the Effective Date:

EMCA-27406

Globalaw Limited
0825

6.1     <u>Transferred Assets</u>.  Assignor has good title to the Transferred Assets and Assignor will transfer and convey the Transferred Assets to Assignee free and clear of all liens, pledges, charges, title retention, rights of third parties or security agreements, other than the liens or encumbrances set forth on Exhibit B hereto.

6.2     <u>Marks and Domain Names</u>.  Assignor is the sole owner of the Marks and Domain Names, and has used the Marks and Domain Names exclusively in connection with the business and affairs of the Globalaw association.

6.3     <u>Contracts</u>.  Exhibit A sets forth all contracts and other agreements to which Assignor is a party, which Assignee is assuming hereunder.  Assignor has delivered to Assignee a correct and complete copy of each Contract.  With respect to each such Contract:  (a) the Contract is a legal, valid, binding and enforceable obligation of Assignor and is in full force and effect; (b) the Contract will continue to be in full force and effect on identical terms following the consummation of the transactions contemplated hereby; (c) Assignor is not, and to his knowledge no other party thereto is, in material breach or default, and, to the knowledge of Assignor, no event has occurred which with notice or lapse of time or both would constitute a material breach or default, or permit termination, modification or acceleration, under the Contract; (d) Assignor has not, and to its knowledge no other party thereto has, repudiated any material provision of the Contract; (e) all amounts due and owing under the Contracts as of December 31, 2001 will be paid by Assignor and (f) except as set forth on Exhibit B, each such Contract may be assigned by Assignor without the consent of the other party thereto.

6.4     <u>Non-Contravention. Approvals</u>.

(a)     This Agreement and all other agreements to be executed and delivered by Assignor as contemplated by this Agreement have been duly executed and delivered by Assignor, and, assuming the due authorization, execution and delivery hereof and thereof by Assignee, each constitutes a valid and legally binding agreement of Assignor enforceable against him or any affiliated organization in accordance with its terms, except that such enforcement may be subject to (i) bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting or relating to enforcement of creditors' rights generally and (ii) general equitable principles.

(b)     The execution and delivery of this Agreement does not violate, conflict with or result in a breach of any material provision of, or constitute a material default (or an event which, with notice or lapse of time or both, would constitute a material default) under, or result in the termination of, or accelerate the performance required by, or result in a right of termination or acceleration under, or, except as provided in Section 3.2, result in the creation of any lien, security interest, charge or encumbrance upon any of the Transferred Assets under the terms, condition or provisions of any statute, law, ordinance, rule, regulation, judgment, decree, order, injunction, writ, permit or license of any court or governmental authority known by Assignor to be applicable to it or any of the Transferred Assets.

(c)     No declaration, filing or registration with or notice to, or authorization, consent or approval of, any governmental or regulatory body or authority is known

EMCA-27406

by Assignor to be necessary for the execution and delivery of this Agreement or the consummation by Assignor of the transactions contemplated by this Agreement.

6.5     Litigation.     Except as disclosed in Exhibit B, there are no claims, suits, actions or proceedings, including any labor-related proceeding or actions, pending or, to the knowledge of Assignor, threatened against or relating to Assignor before any court, governmental department, commission, agency, instrumentality or authority or any arbiter which could reasonably be expected, either alone or in the aggregate with all such claims, actions or proceedings, to cause a material adverse effect to Assignor or which would prohibit or restrict the consummation of the transactions contemplated by this Agreement.

7.     **Further Assurances**.  From time to time after the Effective Date, at either Party's request, the other Party will execute and deliver such other and further instruments of conveyance, assignment and transfer, and take such other action, as the requesting Party may reasonably request for the more effective conveyance and transfer of the Transferred Assets and/or assumption of the Assumed Liabilities.

(a)     Assignor hereby agrees that he will from time to time, if requested by the Assignee or the successors or assigns of the Assignee, execute, acknowledge and deliver, or cause to be executed and delivered to Assignee or its successors or assigns such and all further acts, transfers, assignments, transfer documents, powers and assurances of title and additional papers and instruments that may be necessary or desirable to carry out the intent hereof and to vest in Assignee the entire right, title and interest of Assignor in and to the Marks throughout the world.

(b)     Assignor agrees that he will assist Assignee or its successor or assigns with applications to register any of the Marks in any jurisdiction in the world where they are not now registered including, without limitation, helping to establish priority of use or satisfy any other predicates for registration.

(c)     Assignor also agrees that he will assist Assignee or its successor or assigns with the defense of the Marks in any legal action, now pending or later instituted in any jurisdiction in the world including, without limitation, helping to establish priority of use.

8.     **Closing**.

The closing for the transfer of the Marks, the Web Site, the Web Site Assets and the Organization Records contemplated by this Agreement shall be deemed to occur on the Effective Date.  The closing for the transfer of the Contracts and Other Assets contemplated by this Agreement shall be deemed to have occurred on December 31, 2001.

9.     Fees and Expenses.

The Parties shall share equally all fees and expenses incurred in consummating the transactions described in this Agreement; provided that each Party shall be responsible for its own legal and other professional fees, except for any professional fees the Parties have agreed to share.

10.     Notices.

**Globalaw Limited
0827**

All notices and other communications in regard hereto shall be validly given or sent if in writing and delivered personally, or sent by facsimile with confirmation received, or sent by registered or certified mail, or by commercial carrier with verification or confirmation of delivery provided, to the last known address of the addressee, or to such other address as any Party may designate to the others in writing.

11.    Governing Law.

The validity, performance and enforceability of this Agreement shall be governed by the laws of England, without giving effect to the principles of conflicts of laws of England or any other jurisdiction.

12.    Miscellaneous.

This Agreement sets forth the entire understanding and agreement among the Parties hereto with respect to the subject matter hereof and supersedes any prior understanding between the Parties hereto. There are no representations, understandings or promises related to the subject matter of this Agreement other than as expressly set forth in this Agreement. This Agreement cannot be altered, changed, modified or amended except in writing signed by the Parties. Neither Party may assign its rights and obligations under this Agreement, without the prior written consent of the other Party hereto. If any provision of this Agreement should be invalid or unenforceable, such invalidity or unenforceability will not, in any manner, affect the continued validity and enforceability of the remaining provisions of this Agreement. The captions contained in this Agreement are not a part of this Agreement, but are for the convenience of the Parties only and do not in any way modify any provision of this Agreement. This Agreement will bind and inure to the benefit of the Parties hereto and their respective successors and permitted assigns. The waiver by a Party of a breach or violation of any provision of this Agreement will not operate or be construed as a waiver of any other or subsequent breach or violation hereof.

13.    Severability.

In the event any provision or portion of this Agreement shall be determined to be invalid or unenforceable for any reason, the remaining provisions of this Agreement shall remain in full force and effect to the fullest extent permitted by law.

14.    Counterparts.

This Agreement may be executed in one or more counterparts, all of which taken together will constitute one instrument.

EMCA-27406

## Signatures

The Parties have executed this Asset Transfer and Consulting Agreement as of the Effective Date.

**DENNIS CAMPBELL**, as Assignor

By: _____
Name: Dennis Campbell

**GLOBALAW LIMITED**, as Assignee

By: _____
Name: C. Baird Brown
Title: President

EMCA-27406

Globalaw Limited
0829

## EXHIBIT A

### Transferred Assets

**A.    Marks**

**Argentina**

No Trade mark Application/Registration to date.

**Australia**

Particulars

| | |
|---|---|
| Registration No. | 647,461 (as per letter 3 October 1996 by J. Scott Evans, Attorney-at-Law) |
| Reg. Date | Not Available |
| Class | 42 |

Notes -                Awaiting Cert. of Registration to be sent from Attorneys.

**Austria**

Particulars

| | |
|---|---|
| Registration No. | 156,801 |
| Reg. Date | 17 February 1995 |
| Class(es) | 35, 41, 42. |

Notes

Under the Madrid Arrangement, the following countries are given priority in Service Mark Application as of 3 February 1995 – Benelux, Egypt, France, Germany, Hungary, Italy, Liechtenstein, Monaco, Morocco, Poland, Portugual, Spain, Switzerland

Egypt – Protection of Service mark denied as the application for legal services under Class 42 was filed under the name of Dr. Lothar Hoffman, Attorney.
Poland – Registration rejected because of Class 42 clause.

Spain – Protection of Service Mark granted under Classes 35 and 41.  Class 42 was rejected.  (Please note that this application was made in the name of Dennis Campbell)

Switzerland – Service Mark Protection rejected.

Globalaw Limited
0830

## Bahamas

Particulars

| | |
|---|---|
| Application No. | 18,937 |
| Reg. date | 19 September 1997 |
| Class No | 39 |

## Barbados

No Application/Certificate of Registration

## Benelux

| | |
|---|---|
| Registration No. | 811675 |
| Reg. Date | 28 August 1996 |
| Class | 42 |

## Bolivia

| | |
|---|---|
| Registration No. | 64003 – C |
| Reg. Date | 26 May 1997 |
| Class | 42 |

## Brazil

| | |
|---|---|
| Registration No. | 81812942 |
| Reg. Date | 12 December 1994 |
| Class | 40.30 |

## Canada

| | |
|---|---|
| Application No. | 77,069 |
| Filed | 11 November 1994 |

Notes

Counter Statement was filed on the 12 September 1996 by S & E Management Ltd. To date, matter remains unresolved.

EMCA-27406

Globalaw Limited
0831

### Channel Islands (Jersey)

Particulars – On 12 August 1996, the Service Mark entered in the United Kingdom Register of Trade Marks under No. 2004333 was registered in Part A of the Register of Trade Marks kept in pursuance of Article 3 of the Trade Marks (Jersey) Law under TM 6871 in the name of DENNIS CAMPBELL in respect of services comprised in the United Kingdom registration.

Registration Certificate 14 August 1996

### Chile

Particulars

| | |
|---|---|
| Application No. | 325 351 |
| Class | 42 |

Notes

On 25 August 1999, the application was accepted to registration. Further to be noted that there was a Statement of Opposition filed by Prosersa S.A. which was rejected. There is no evidence that an appeal has been filed. Thus, processing of the Service Mark application can be continued.

### Costa Rica

Particulars

| | |
|---|---|
| Registration Cert. No. | 103 557 |
| Registration Date | 3 September 1997 |
| Class No. | 42 |

### Cyprus

Particulars

Trademark registration pending.

Notes

The Globalaw trademark was accepted for registration on December 13, 2001. If no objection is filed, the registration will be final within 45 days.

EMCA-27406

**Globalaw Limited**
**0832**

## Denmark

### Particulars

| | |
|---|---|
| Registration No. | UR. 01.367 1995 |
| Registration Date | 24 February 1995 |
| Renewal Date | February 24, 2005 |
| Class No. | 42 |

## Ecuador

### Particulars

Application pending.

## Egypt

### Notes

A letter of 8 August 1996 from Melinda M. Lord of the Kamel Law Office states that GLOBALAW was registered in Egypt under WIPO registration 17 February 1995 and is good for 20 years. Though no specific reference was made, it is assumed that the registration was effected under Classes 35 and 41. Class 42 was categorically denied.

## Finland

### Particulars

| | |
|---|---|
| Registration No. | 13731 |
| Registration Date | 21 August 1995 |
| Renewal Date | 21 August 2005 |
| Class | 42 |

## France

### Particulars

Application No. 21/06. 51.018 pending

## Germany

### Notes  By letter of 17 September 1997 from Martin Wolf of Huth Dietrich Hahn, pursuant to Article 4 of the Madric Convention, the GLOBALAW is protected in Germany as if it were registered with the national office, the international registration of the trade mark being extended to Germany.

EMCA-27406

**Globalaw Limited**
**0833**

**Greece**

Notes

No registration to date.  An amended Power of Attorney is required to proceed with the formal application.

**Hong Kong**

Particulars

Registration No.        B14844 of 1999
Reg. Date               1 July 1996
Class                   42

**Indonesia**

Particulars

No registration to date.

**Iran**

Particulars

No registration to date.

**Ireland**

Particulars

Registration No.        201211
Reg. Date               11 June 1998
Class:                  42

**Israel**

Particulars

No application to date.

EMCA-27406

**Globalaw Limited**
**0834**

## Italy

Particulars

No application to date.

## Japan

Particulars

| | |
|---|---|
| Registration No. | 4343740 |
| Reg. Date | 10 December 1999 |
| Renewal Date | 10 December 2009 |
| Class: | 42 |

Notes

Registration is effective for 10 years and may be renewed for a further 10-year period.

## Korea

Particulars

| | |
|---|---|
| Registration No. | 55736 |
| Reg. date | 23 July 1999 |
| Renewal Date | 23 July 2009 |
| Class | 112 (marketing services) |

## Liechtenstein

Particulars

| | |
|---|---|
| Registration No. | 9879 |
| Reg. Date | 9 October 1996 |
| Renewal Date | 13 June 2016 |
| Class | 42 |

Notes

| | |
|---|---|
| Owner: | Dr. Markus Wanger |
| | Advokaturbüro |
| | Landstrasse 36 |
| | FL – 9490 Vaduz |

EMCA-27406

## Mexico

Particulars

| | |
|---|---|
| Registration No. | 553,747 |
| Reg. Date | 7 December 1994 |
| Class | 42 |

## New Zealand

Particulars

| | |
|---|---|
| Registration No. | 264,099 |
| Reg. Date | 6 October 1997 |
| Class: | 42 |

## Norway

Particulars

| | |
|---|---|
| Registration No. | 176,602 |
| Reg. Date | 5 September 1996 |
| Renewal Date | 5 September 2006 |
| Class | 42 |

## Panama

Particulars

| | |
|---|---|
| Registration No. | 81329 |
| Reg. Date | 18 July 1997 |
| Class | 42 |

## Peru

Particulars

No application/registration to date.

## The Philippines

Particulars

No application/registration to date.

EMCA-27406

**Globalaw Limited**
**0836**

## Singapore

Particulars

Application No.:          3180/95

Notes

Registration Pending

## South Africa

Particulars

Registration Number      94/13723
Reg. Date                16 August 1994
Renewal Date             8 December 2004
Class                    42

## Spain

Particulars

Application No.           631306
Class                     42

Notes

It would appear from the documentary evidence that Application 631306 was registered in the name of Dr. Lothar Hoffmann and this application was made prior to the international trade mark application made under the name of Dennis Campbell. Please be informed that at all material times, Dr. Hoffmann acted in a nominee capacity in respect of the ownership of the trade marks.

## Sweden

Particulars

Registration No.          308163
Reg. date                 26 January 1996
Renewal Date              26 January 2006 and every 10th year
Class                     42

EMCA-27406

**Globalaw Limited**
**0837**

## Switzerland

Particulars

Application/registration not accepted.

## United Arab Emirates

Particulars

No application/registration

## United Kingdom

Particulars

Registration Certificate No.     2004333
Reg. Date                        6 December 1994
Class                            42

## Venezuela

Particulars

No application/registration

EMCA-27406

## B.    Domain Names

globalaw.ch (Switzerland)
globalaw.cl (Chile)
globalaw.co.at (Austria)
globalaw.co.nz (New Zealand)
globalaw.co.uk (United Kingdom)
globalaw.co.za (South Africa)
globalaw.com.mx (Mexico)
globalaw.com.pa (Panama)
globalaw.li (Liechtenstein)
globalaw.lu (Luxembourg)
globalaw.org.ru (Russia)
globalaw.net
globalaw-group.com
globalcommerce-assist.net

**Globalaw Limited**
**0839**

## C.    Organizational Records

1 file per Globalaw member (current and past members)
1 file per Globalaw meeting
25 Globalaw Membership Directory binders
1 trademark file for each registered country
1 Carmon & Carmon file (copy with Jackson Walker and not updated since the matter was assumed by Jackson Walker)
Globalaw News archives 1994-
International Reports archives 1994-

EMCA-27406

**Globalaw Limited**
**0840**

**D.    Contracts**

There are no existing contracts on behalf of Globalaw.

**Globalaw Limited
0841**

**E.    Prepaid 2002 Dues**

Membership Fees paid in 2001 and Applicable to 2002

| | | |
|---|---|---|
| Abacus | - | $ 1,000.00 (January – August 2002) |
| Attride | - | $    875.00 (January – July 2002) |
| Bahar | - | $    500.00 (January – April 2002) |
| Ballard Spahr | - | $ 4,664.00 (January – August 2002) |
| Day Berry | - | $    583.00 (January 2002) |
| Elite Shay | - | $    875.00 (January – July 2002) |
| Espino Neto | - | $    875.00 (January – July 2002) |
| Fortun Navarra | - | $    625.00 (January – May 2002) |
| Klyer Colarini | - | $    250.00 (January – February 2002) |
| Ruden McCloskey | - | $ 1,749.00 (January – March 2002) |
| Saragoca | - | $    250.00 (January – February 2002) |
| Van Mens | - | $    375.00 (January – March 2002) |

*Cleaver        —    $ 1,125.00 (January – September 2002)  DC 25 2 2002*

**Total**        ~~$12,621.00~~ $ 15,746.00

*DC 25.2.2002*

EMCA-27406

**Globalaw Limited**
**0842**

**F.**    **Other Assets**

1 box of Globalaw brochures (approximately 750 copies)
1 box of Globalaw memberships pins
4 Globalaw membership plaques

EMCA-27406

**Globalaw Limited**
**0843**

<u>EXHIBIT B</u>

### Exceptions To Representations and Warranties

A.    Liens on Transferred Assets

     None

B.    Contracts Requiring Consent of a Third Party to Assign

     None

C.    Litigation

     There is no pending or prospective litigation involving Globalaw other than that relating to the Globalaw name in the United States.

EMCA-27406

**Globalaw Limited
0844**

<u>EXHIBIT C</u>

Unpaid 2001 Dues

| | | |
|---|---|---|
| Bergstein | - | $ 125.00 (December 2001) |
| Blanco | - | $ 125.00 (December 2001) |
| Botello | - | $ 875.00 (June – December 2001) |
| ~~Cleaver~~ | - | ~~$ 375.00 (October – December 2001)~~ ) DC 25.2.2002 |
| Hilmy | - | $ 750.00 (July – December 2001) |
| Kyriakides | - | $1,500.00 (January – December 2001) |
| Legalis | - | $ 125.00 (December 2001) |
| Pinzon | - | $1,125.00 (April – December 2001) |
| Zammit | - | $ 250.00 (November – December 2001) |

Outstanding Payment for Philadelphia Meeting

Awodein          -     $  920.00

**Total**          ~~$6,170.00~~  $5,795.00   DC 25.2.2002

EMCA-27406

**Globalaw Limited**
**0845**